Thomas EDWARDS, Jeanette Caldwell, and John Vigil, Plaintiffs-Appellees/Cross-Appellants,

v.

Ruben VALDEZ, Executive Director, Colorado Department of Labor; John Kezer, Director, Division of Employment and Training; and Industrial Commission of Colorado (Ex-Officio the Unemployment Compensation Commission), in their official capacities, Defendants-Appellants/Cross-Appellees.

Nos. 85–1552, 85–1650.

United States Court of Appeals, Tenth Circuit.

May 5, 1986.

Timothy R. Arnold, First Asst. Atty. Gen., Human Resources Section (Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Gregory K. Chambers, Asst. Atty. Gen., Human Resources Section, and Richard H. Forman, Sol. Gen., with him on briefs), Denver, Colo., for defendants-appellants/cross-appellees.

Melody K. Fuller (Jackson L. Peters, Jr., Pikes Peak Legal Services, Colorado Springs, Colo., and Brian Patrick Lawler, Colorado Coalition of Legal Service Programs, Denver, Colo., with her on briefs), Legal Aid Society of Metropolitan Denver, Inc., Denver, Colo., for plaintiffs-appellees/cross-appellants.

Francis X. Lilly, Sol. of Labor, Allen H. Feldman, Acting Associate Sol., Sp. Appellate and Supreme Court Litigation Div., Carol A. DeDeo, Counsel for Appellate Litigation, Steven J. Mandel and Bette J. Briggs, Washington, D.C., for the U.S. Dept. of Labor.

Jordan Rossen, General Counsel and Richard W. McHugh, Associate Gen. Counsel, Detroit, Mich., for Intern. Union, United Auto., Aerospace and Agr. Implement Workers of America.

Before SEYMOUR, SETH and BALDOCK, Circuit Judges.

BALDOCK, Circuit Judge.

This case involves the interplay between two welfare programs: social security and unemployment compensation. Plaintiffs-appellees/cross-appellants (plaintiffs) are three residents of Colorado who retired and began to receive social security payments. Each plaintiff returned to work for a new employer, subsequently became unemployed, and filed unemployment insurance claims with defendants-appellants/cross-appellees (defendants). Based on an interpretation of the pension offset provision of the Federal Unemployment Tax Act (FUTA), 26 U.S.C. § 3304(a)(15), and a similar state law, Colo.Rev.Stat. § 8–73–110(3)(a), defendants deducted the social security benefits each plaintiff received from the amount of unemployment insurance to which each plaintiff was otherwise entitled. The district court found in favor of plaintiffs and prohibited the defendants from deducting social security and railroad benefits from unemployment insurance benefits unless the "base period" employer is the same as the "social security" employer. Because we hold that unemployment insurance benefits are to be offset by social security payments whenever the base period employer contributes to social security, the district court's judgment is reversed.

## I. *Background*

Plaintiffs brought this action on behalf of themselves and all others similarly situated. They challenged Colorado's interpretation of 26 U.S.C. § 3304(a)(15)(A)(i)[1] which allowed it to offset unemployment compensation by the amount of social security benefits received whenever the "base period"[2] employer participates in the social security program. It is plaintiffs' contention that this provision is applicable only if an employer contributed to the social security benefits of a particular employee before retirement.

In the district court, plaintiffs asserted that Colorado's interpretation of this federal statute is at variance with the statute's legislative history and that such interpretation violates their equal protection and due process rights. They also alleged that the "when due" provision of 42 U.S.C. § 503(a)(1)[3] was violated by defendants' application of the offset statute. Their final argument was that the federal statute sets the maximum pension-offset level and Colorado's statute, Colo.Rev.Stat. § 8–73–110(3)(a),[4] may not exceed that level.

The trial judge, in her February 13, 1985, memorandum opinion and order, ruled on these issues on cross-motions for summary judgment. *Edwards v. Valdez*, 602 F.Supp. 361 (D.Colo.1985). The court found 26 U.S.C. § 3304(a)(15) to be ambiguous which justified an exhaustive analysis of the statute's legislative history. The district judge rejected defendants' contention that the offset provision was enacted as a savings device and found instead that its primary purpose is to avoid "double-dipping."[5] Based on this finding, she then

---

1. 26 U.S.C. § 3304(a)(15) provides as follows:

    (15) the amount of compensation payable to an individual for any week which begins after March 31, 1980, and which begins in a period with respect to which such individual is receiving a governmental or other pension, retirement or retired pay, annuity, or any other similar periodic payment which is based on the previous work of such individual shall be reduced (but not below zero) by an amount equal to the amount of such pension, retirement or retired pay, annuity, or other payment, which is reasonably attributable to such week except that—

    (A) the requirements of this paragraph shall apply to any pension, retirement or retired pay, annuity, or other similar periodic payment only if—

    (i) such pension, retirement or retired pay, annuity, or similar payment is under a plan maintained (or contributed to) by a base period employer or chargeable employer (as determined under applicable law), and

    (ii) in the case of such a payment not made under the Social Security Act or the Railroad Retirement Act of 1974 (or the corresponding provisions of prior law), services performed for such employer by the individual after the beginning of the base period (or remuneration for such services) affect eligibility for, or increase the amount of, such pension, retirement or retired pay, annuity, or similar payment, and

    (B) the State law may provide for limitations on the amount of any such a reduction to take into account contributions made by the individual for the pension, retirement or retired pay, annuity, or other similar periodic payment....

2. The "base period" is the period of time an employee must be employed before he is eligible for unemployment benefits. The "base period" employer, therefore, is the employer who paid wages during this eligibility period.

3. 42 U.S.C. § 503(a)(1) contains the following language:

    The secretary of Labor shall make no certification for payment to any State unless he finds that the law of such State, approved by the Secretary of Labor under the Federal Unemployment Tax Act, includes provision for—

    (1) Such methods of administration (including after January 1, 1940, methods relating to the establishment and maintenance of personnel standards on a merit basis, except that the Secretary of Labor shall exercise no authority with respect to the selection, tenure of office, and compensation of any individual employed in accordance with such methods) as are found by the Secretary of Labor to be reasonably calculated to insure full payment of unemployment compensation when due....

4. This statute provides as follows:

    An individual's weekly benefit amount shall be reduced (but not below zero) by the prorated amount of a primary insurance benefit under Title II of the federal "Social Security Act," a pension, retirement or retired pay, annuity, or any other similar periodic payment from a plan or fund which has been contributed to by a base period employer.

5. The term "double-dipping" in this context refers to the collection of both pension benefits and unemployment benefits based on the same period of work and contributions by the same employer.

concluded that the offset provision is applicable only when the base period employer and the social security employer are the same. She also ruled that neither the "when due" statute nor the due process clause was violated. Although she also found no violation of equal protection because of her interpretation of the statute, she noted that Colorado's interpretation would violate plaintiffs' equal protection rights. The parties stipulated that the Colorado offset statute and the federal statute are identical, and the district court found the same.

The defendants, relying on the holding in *Pennhurst State School v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), asserted that the eleventh amendment divested the court of jurisdiction because they viewed the case as a suit against Colorado for the violation of a Colorado statute. The district court concluded that there was no jurisdictional bar because the suit primarily involves federal statutory and constitutional law, but ruled that the holding in *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), limited plaintiffs' remedy to injunctive relief. Because retroactive monetary damages were not available, the court declined to certify a class under Fed.R.Civ.P. 23. Plaintiffs were awarded $25,260 for attorney's fees by order dated April 5, 1985.

Defendants now raise the following issues on appeal:

(1) Whether the eleventh amendment bars jurisdiction of this action;

(2) Whether federal and Colorado law require unemployment benefits to be offset by social security benefits whenever the base period employer contributes to social security;

(3) Whether Colorado's interpretation of the federal and state offset provisions violate plaintiffs' equal protection rights;

(4) Whether the United States Secretary of Labor is an indispensable party pursuant to Fed.R.Civ.P. 19; and

(5) Whether the court erred in awarding plaintiffs attorney's fees.

The plaintiffs cross-appeal, raising the following issues:

(1) Whether plaintiffs are entitled to retroactive monetary relief;

(2) Whether class certification is appropriate in this case; and

(3) Whether the district court erred in limiting the attorney's fee award to $75 per hour.

## II. *Discussion*

### A. *Eleventh Amendment*

The eleventh amendment of the United States Constitution prohibits maintaining a suit in federal court when an unconsenting state, or one of its agencies, is named as a defendant. It provides the following limitation:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

The amendment reflects the principle that sovereign immunity limits judicial authority granted by article III of the Constitution. In holding that the eleventh amendment prevents a federal court from considering a suit by a citizen against his own state, the Supreme Court has noted that federal jurisdiction over suits against unconsenting states "was not contemplated by the Constitution when establishing the judicial power of the United States." *Hans v. Louisiana*, 134 U.S. 1, 15, 10 S.Ct. 504, 507, 33 L.Ed. 842 (1890). Thus, the eleventh amendment is but an "exemplification" of the principle of sovereign immunity. *Ex parte State of New York No. 1*, 256 U.S. 490, 497, 41 S.Ct. 588, 589, 65 L.Ed. 1057 (1921); *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979).

When a suit is brought against state officials, it is necessary to determine whether the suit is against the state itself, i.e., whether "the state is the real, substantial party in interest," *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945) and whether the suit is based on alleged

violations of state or federal law. *Pennhurst*, 104 S.Ct. at 910. A suit which alleges that a state official's action is unconstitutional is not against the state itself and is not barred by the eleventh amendment. *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Nevertheless, the relief afforded for a state official's violation of federal law is limited to an injunction that governs the official's future conduct and retroactive monetary relief is not available. *Edeleman v. Jordan*, 415 U.S. at 666–67, 94 S.Ct. at 1357. A claim that a state official violated state law, however, is one against the state and therefore barred by the eleventh amendment. *Pennhurst*, 104 S.Ct. at 910.

■ An application of these principles to this case fails to reveal a jurisdictional impediment. Although the Colorado offset provision certainly is relevant to the analysis, because the federal statute sets forth the minimum requirement, we must look to the federal statute to resolve the questions presented by this case. Additionally, the eleventh amendment is not a bar because the suit alleges that the defendants' conduct is unconstitutional. *See, e.g., Pennhurst*, 104 S.Ct. at 909; *Ex parte Young*, 209 U.S. at 144–45, 28 S.Ct. 447–48. Thus, the eleventh amendment does not prohibit the maintenance of this suit in federal court.

B. *The Offset Requirements*

The language of section 3304(a)(15)(A)(i) specifies that if a base period employer contributes to social security, then unemployment benefits must be offset by social security benefits. The language of the statute is clear and does not contain any qualification which would prevent its application when an employee qualifies for social security benefits while working for a

different employer than his base period employer. The language of the statute, standing alone, compels only one interpretation: that social security benefits offset unemployment benefits if the base period employer makes social security contributions.

The district court qualified the language of the statute by restricting its application to a base period employer who contributed to the social security benefits of the unemployment compensation applicant prior to retirement. This was accomplished by finding the language of the statute ambiguous, then analyzing the legislative history, discerning the statute's underlying purpose or intent, concluding that the literal meaning of the statutory language and congressional intent are at odds, and then qualifying the statute so as to accommodate the perceived legislative intent.

■ We have reviewed the language of the statute and find it clear and unambiguous. This conclusion is shared by every other circuit that has interpreted this statute to date. *See Rivera v. Becerra*, 714 F.2d 887, 893 (9th Cir.1983), *cert. denied*, 465 U.S. 1099, 104 S.Ct. 1591, 80 L.Ed.2d 124 (1984); *Bowman v. Stumbo*, 735 F.2d 192, 197 (6th Cir.1984); and *Watkins v. Cantrell*, 736 F.2d 933, 938–39 (4th Cir. 1984); *see also Mayberry v. Adams*, 745 F.2d 729 (1st Cir.1984) (per curiam) (adopting the rationale of *Watkins v. Cantrell*).[6] The district court's analysis, therefore, was flawed from the outset. It is a well established law of statutory construction that, absent ambiguity or irrational result, the literal language of a statute controls. *United States v. Richards*, 583 F.2d 491, 495 (10th Cir.1978). When the meaning of the statute is clear, it is both unnecessary and improper to resort to legislative history to divine congressional intent.[7] As recent-

---

**6.** Many district courts have also arrived at this conclusion. *See Duso v. Ratoff*, 600 F.Supp. 3 (D.N.H.1983); *Bleau v. Hackett*, 598 F.Supp. 727 (D.R.I.1984); *Peare v. McFarland*, 577 F.Supp. 791, 794 (N.D.Ind.1984) ("The proper function of legislative history is to solve, and not create, ambiguity.").

**7.** The federal court has been far from consistent in its articulation of when it is appropriate to

deviate from the plain language of a statute. For example, it may be inferred from the language used in *Hunt v. Nuclear Regulatory Commission*, 611 F.2d 332, 336 (10th Cir.1979), *cert. denied*, 445 U.S. 906, 100 S.Ct. 1084, 63 L.Ed.2d 322 (1980), that legislative history must always be examined, regardless of the language of the statute. In that case we stated: "Reference to legislative history is said to be quite proper, 'however clear' the language of a statute may

ly noted by the Supreme Court, we must start with the assumption that legislative purpose is reflected by the ordinary meaning of the language used in the statute. *United States v. Locke,* — U.S. —, 105 S.Ct. 1785, 1793, 85 L.Ed.2d 64 (1985). The district court erred by placing such heavy reliance on legislative history when the literal meaning of the words used are clear and the plain language does not lead to an irrational result.

■ Because we conclude that § 3304(a)(15)(A)(i) is clear and unequivocal on its face, we find no need to dwell on its legislative history. The legislative history is fully reviewed in the district court's order. 602 F.Supp. at 365–69. *See also Rivera v. Becerra,* 714 F.2d at 892–93; *Bowman v. Stumbo,* 735 F.2d at 197–98; *Watkins v. Cantrell,* 736 F.2d at 939–43. Although the district court characterized defendant's interpretation of the statute as harsh, 602 F.Supp. at 368, we are aware that the judiciary is not "licensed to attempt to soften the clear import of Congress' chosen words whenever a court be-

appear to be. Such reference is permissible in order to make certain that the apparent 'clearness' is not superficial in nature." *Id.* This approach is at odds with prior Tenth Circuit law. *See, e.g., Nichols v. Denver & R.G.W.R. Co.,* 195 F.2d 428, 431 (10th Cir.1952) ("In the absence of ambiguity, resort may not be had to the legislative history of a statute for the purpose of construing it...."). *Haskell v. United States,* 241 F.2d 790, 792 (10th Cir.), *cert. denied,* 354 U.S. 921, 77 S.Ct. 1379, 1 L.Ed.2d 1436 (1957) ("Where the language used is clear, there is no need to refer to legislative history.").

Despite this inconsistency, the Supreme Court has adhered to the canon of statutory construction that it is inappropriate to refer to legislative history where the statutory language is clear. *United States v. Locke,* — U.S. —, 105 S.Ct. 1785, 1793, 85 L.Ed.2d 64 (1985); *Gemsco v. Walling,* 324 U.S. 244, 260 (1945); *Ex parte Collett,* 337 U.S. 55, 61, 69 S.Ct. 944, 947, 93 L.Ed. 1207 (1949); *United States v. Oregon,* 366 U.S. 643, 648, 81 S.Ct. 1278, 1281, 6 L.Ed.2d 575 (1961); *United States v. Bowen,* 100 U.S. 508, 513–14, 25 L.Ed. 631 (1879). This rule has developed because the language of the statute embodies congressional hearings, reports and debate; it is those words which are before Congress as a whole and on which Congress agrees. Floor debates and reports, therefore, may not accurately reflect what Congress intended to

lieves those words lead to a harsh result." *Locke,* 105 S.Ct. at 1793. Thus, § 3304(a)(15)(A)(i) means that social security benefits are to offset unemployment benefits if the base period employer makes social security contributions.

### C. Equal Protection

The United States Constitution generally provides that all persons similarly situated should be treated alike.[8] *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982). "Strict scrutiny" and "rational basis" are the two traditional standards used to determine the validity of legislation that is challenged as denying equal protection. The strict scrutiny standard is applied when a classification involves a suspect class or affects a fundamental right. Suspect classifications generally include those based on race, alienage, and national origin. *City of Cleburne v. Cleburne Living Center,* — U.S. —, 105 S.Ct. 3249, 3255, 87 L.Ed.2d 313 (1985). Fundamental rights include voting, privacy, freedom of association, marriage, and trav-

enact. As Justice Frankfurter noted: "We must be wary against interpolating our notions of policy in the interstices of legislative provisions." *Scripps-Howard v. FCC,* 316 U.S. 4, 11, 62 S.Ct. 875, 880, 86 L.Ed. 1229 (1942). Additionally, the President plays an important role in the enactment of law because he must vote to approve it (unless two-thirds of the House and Senate override his veto). It is only the words of the statute that are given his approval and an interpretation based on legislative history excludes the President's role in the process. The judiciary's function in interpreting statutes was appropriately summarized by Justice Holmes in *Collected Legal Papers* at 207 (1920): "We do not inquire what the legislature meant; we ask only what the statute means." *Cited in Schwegmann Bros. v. Calvert Corp.,* 341 U.S. 384, 397, 71 S.Ct. 745, 751, 95 L.Ed. 1035 (1951) (Jackson, J., dissenting).

8. The equal protection clause is found in the fourteenth amendment and provides that "no state shall deny to any person within its jurisdiction equal protection of the laws." Although no similar provision is found in the fifth amendment, equal protection is also applicable to the federal government because the fifth amendment "does forbid discrimination that is 'so unjustifiable as to be violative of due process.'" *Schneider v. Rusk,* 377 U.S. 163, 168, 84 S.Ct. 1187, 1190, 12 L.Ed.2d 218 (1964).

el. *See generally San Antonio School Dist. v. Rodriguez,* 411 U.S. 1, 17–39, 93 S.Ct. 1278, 1288–1300, 36 L.Ed.2d 16 (1973). If a statute defines a class based on a suspect category or if it infringes upon a fundamental right, it is subject to strict scrutiny and will be sustained only if it is precisely tailored to further a compelling state interest. Most other statutes except those involving gender and illegitimacy will be reviewed under the rational basis standard which starts from a presumption of validity and merely requires the classification to be rationally related to a legitimate state interest. *Ohio Bureau of Employment Services v. Hodory,* 431 U.S. 471, 489, 97 S.Ct. 1898, 1908, 52 L.Ed.2d 513 (1977). An intermediate level of scrutiny, requiring the classification to substantially further a legitimate state interest, is applied to categories based on gender, *Craig v. Boren,* 429 U.S. 190, 191–204, 97 S.Ct. 451, 453–60, 50 L.Ed.2d 397 (1976) and illegitimacy, *Mathews v. Lucas,* 427 U.S. 495, 505, 96 S.Ct. 2755, 2762, 49 L.Ed.2d 651 (1976).

■ Section 3304(a)(15)(A)(i) does not involve a suspect class, affect a fundamental right, nor is it based on gender or legitimacy. We conclude, therefore, that the rational basis test should be applied to determine whether the statute violates plaintiffs' right to equal protection. In applying this standard, we are not unmindful of the special deference given to the states and Congress when the law concerns social welfare programs. *U.S. Railroad Retirement Bd. v. Fritz,* 449 U.S. 166, 174–77, 101 S.Ct. 453, 459–60, 66 L.Ed.2d 368 (1980); *City of Cleburne v. Cleburne Living Center,* 105 S.Ct. at 3254.

■ The rational basis test requires the court to identify the class created by the statute, and then determine whether the classification is rationally related to a legitimate governmental interest. The class involved in this case is social security recipients—the offset applies to social security recipients but not those receiving private

pensions. The asserted governmental interests include ease of administration and preservation of the fiscal integrity of the unemployment insurance program.[9] It has become established that these are legitimate governmental concerns. *Ohio Bureau of Employment Service v. Hodory,* 431 U.S. at 491–93, 97 S.Ct. at 1909–10; *Idaho Dep't of Employment v. Smith,* 434 U.S. 100, 101, 98 S.Ct. 327, 328, 54 L.Ed.2d 324 (1977); *Schweiker v. Wilson,* 450 U.S. 221, 237–39, 101 S.Ct. 1074, 1084–85, 67 L.Ed.2d 186 (1981); *Rivera v. Becerra,* 714 F.2d at 895; *Watkins v. Cantrell,* 736 F.2d at 945.

Selecting social security recipients to achieve these goals satisfies the "rationally related" prong of the test. Although including private pension recipients within the offset provision might be viewed as more equitable, we cannot conclude that the statute is so inequitable or arbitrary as to be constitutionally infirm. There are plausible reasons for selecting social security recipients and judicial intervention, therefore, is unwarranted. Social security is governed by mandatory provisions which involve public funds and duplicates unemployment insurance as a public wage-replacement program. The blanket application of the offset to all social security recipients also may be justified on the basis of ease of administration.

Although we might find the law unwise or unartfully drawn, the Constitution does not give us the power to impose our views of what constitutes wise economic or social policy. *Metropolis Theatre Co. v. City of Chicago,* 228 U.S. 61, 68–70, 33 S.Ct. 441, 443, 57 L.Ed. 730 (1913). As the Supreme Court noted in *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970):

> In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some

---

**9.** The district court in *Rivera v. Patino,* 524 F.Supp. 136, 145–46 (N.D.Cal.1981) identified two additional purposes: the lessening of the possibility of truly retired workers from collect- ing unemployment benefits and preventing employers from funding two wage-replacement programs for the same period of employment.

"reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78 [31 S.Ct. 337, 340, 55 L.Ed. 369 (1911)].

We find no merit in the challenge to the constitutionality of § 3304(a)(15)(A)(i) as construed by the State of Colorado.

### III. *Conclusion*

In summary, we hold that 26 U.S.C. § 3304(a)(15)(A)(i) requires unemployment insurance benefits to be offset by social security payments whenever the base period employer contributes to social security and that this interpretation of the statute does not violate plaintiffs' equal protection rights. In light of our holding, we need not reach the remaining issues raised by the parties.

The judgment of the district court is reversed and remanded with instructions to vacate the award of costs and attorney's fees and enter judgment for defendants.

SEYMOUR, Circuit Judge, dissenting.

While I agree with the majority that this action is not barred by the Eleventh Amendment, I disagree with its conclusions on the merits. I am persuaded by the trial judge's conclusion that the statute is ambiguous and that the majority's construction is at odds with the Congressional intent. *See* 602 F.Supp. 361, 363–69 (D.C. Colo.1985). I therefore respectfully dissent.