Eugene HARRINGTON, Petitioner,

v.

INDUSTRIAL COMMISSION,
Department of Employment
Security, Respondent.

No. 960710–CA.

Court of Appeals of Utah.

July 17, 1997.

Eugene Harrington, Salt Lake City, Petitioner Pro Se on brief.

Steven Lee Payton, Salt Lake City, for Petitioner.[1]

Lorin R. Blauer and K. Allan Zabel, Salt Lake City, for Respondent.

Before DAVIS, GREENWOOD and ORME, JJ.

## OPINION

GREENWOOD, Judge:

Petitioner Eugene Harrington appeals a decision of the Industrial Commission Board of Review (the Board) finding him ineligible for unemployment benefits and establishing a no-fault overpayment to him in the amount of $5967 for unemployment benefits paid during the period for which he also received Social Security retirement benefits. Harrington challenges the Board's interpretation of federal and state law under which it offset his entitlement to unemployment benefits by one hundred percent of Social Security benefits received. He asserts that no offset at all should occur, or alternatively, the offset should be reduced by the amount of his individual contributions to Social Security. We affirm.

## BACKGROUND[2]

Harrington worked as a carpenter for AP & F Construction, from October 8, 1993 to June 2, 1995, when he was laid off due to a workforce reduction. On June 6, 1995, Harrington filed an application for unemployment benefits. The Department of Employment Security determined that Harrington was eligible to receive weekly unemployment benefits of $253 for twenty-six weeks effective June 4, 1995. In January 1995, Harrington also applied for Social Security retirement benefits.

In July 1995, Harrington returned to the workforce and worked for Newberry Engineering until December 1995, when his employment ended due to a reduction in workforce.

Harrington filed a second claim for unemployment benefits effective December 31, 1995. On January 4, 1996, he informed the Department of Employment Security in a Statement of Retirement Income form that he had applied for Social Security benefits. The Department of Employment Security determined that the four quarters of 1995 constituted Harrington's base pay period because he had earnings with AP & F Construction the first two quarters of 1995 and with Newberry Engineering the last two quarters of 1995. Both of these employers paid contributions on Harrington's wages to the Social Security Administration. Harrington received unemployment insurance benefits totaling $5967 during the benefit year ending June 1, 1996; specifically, he received benefits for the months June and July 1995 and January through May 1996.

In March 1996, Harrington received retroactive Social Security benefits for the months of June, July, September, October, November, and December 1995. He then received monthly Social Security benefits beginning January 1996. Harrington's eligibility for and monthly benefit amount of Social Security payments was computed based on employment prior to October 1993.

On June 2, 1996, Harrington filed a third claim for unemployment benefits, which the Department of Employment Security denied. In an appeal of this decision, the Administrative Law Judge (ALJ) determined that Rule 562–401–207 of the Utah Administrative Code required a recomputation of Harrington's unemployment weekly benefit amount. The ALJ found that Harrington "was entitled to receive Social Security retirement income which reduced his weekly benefit amount by $267 to zero dollars." The ALJ concluded that under such circumstances, Harrington was not eligible to receive unemployment benefits.

---

1. We would like to acknowledge and commend Mr. Payton for generously donating his time and services to petitioner at oral argument through the Utah State Bar's pro bono services program.

2. The following facts are derived from the Administrative Law Judge's decision and are undisputed.

Moreover, the ALJ concluded that under section 35A–4–406(5)(a) of the Utah Code, Harrington was liable for a no-fault overpayment of unemployment benefits. This section provides:

> If any person has received any sum as benefits ... to which under a redetermination or decision he was not entitled, and it has been found that he was without fault in the matter, he is not liable to repay the sum but shall be liable to have the sum deducted from any future benefits payable to him.

Utah Code Ann. § 35A–4–406(5)(a) (Supp. 1996).[3] The ALJ found that Harrington was paid unemployment benefits to which he was not entitled during the months of June and July 1995 and from January through May 1996. Harrington had properly notified the Department of Employment Security of his application for Social Security retirement benefits and thus was not at fault for the $5967 overpayment, concluded the ALJ. The ALJ determined that Harrington was "not required to repay the overpayment in cash but is liable to have such sum deducted from any future valid claim he files." Harrington appealed to the Board, which affirmed the ALJ's decision. The Board also denied Harrington's petition for reconsideration. He now appeals the Board's decision.

## ISSUES

On appeal Harrington raises the following issues: (1) Did the Board err in determining that under section 35A–4–401(2)(c) of the Utah Code and Rule 562–401–207 of the Utah Administrative Code, all Social Security retirement benefits offset unemployment benefits, and does this interpretation conflict with the Federal Unemployment Tax Act, see 26 U.S.C.A. §§ 3301–11 (West 1989 & Supp. 1997); and (2) did the Board erroneously determine that he was liable for a no-fault overpayment in the amount of $5967?

## STANDARD OF REVIEW

■ Under Utah Code Ann. § 63–46b–16(4)(d) (1993), we may grant relief from an agency action if the agency "has erroneously interpreted ... the law." "'We review statutory interpretations by agencies for correctness, giving no deference to the agency's interpretation, unless the statute grants to the agency the discretion to interpret the statute.'"

*VanLeeuwen v. Industrial Comm'n,* 901 P.2d 281, 283 (Utah.Ct.App.) (citations omitted), *cert. denied,* 910 P.2d 426 (Utah 1995); *see also Questar Pipeline Co. v. Utah State Tax Comm'n,* 817 P.2d 316, 317–18 (Utah 1991).

## ANALYSIS

### Social Security Offset

Harrington argues that Congress did not intend that Social Security benefits offset unemployment benefits because unemployment benefits were meant to alleviate "the substantial social ills associated with unemployment and ... ameliorate these problems with a program to pay workers for a limited time while they seek other employment." Utah Admin. Code R562–102–101(1) (1996). Unlike Social Security benefits, which are in the nature of social insurance, asserts Harrington, Congress did not intend for unemployment benefits to provide households with a means of support. Instead, unemployment benefits are designed to provide temporary assistance to the unemployed worker who is experiencing hardship as a result of unemployment. Harrington argues that at the time he applied for and the Department of Employment Security determined him eligible for unemployment benefits, he was truly a displaced worker, experiencing hardship.

Harrington further asserts that Social Security is not "retirement" income as defined under the computation of benefits statute. *See* Utah Code Ann. § 35A–4–401 (Supp. 1996). Harrington argues that because contributions to the Social Security System by both an employer and an employee are required by federal law and not made pursuant to an employment or benefit contract, Social Security benefits are not a "plan maintained or contributed to by a base-period employer."

---

**3.** The relevant sections of the Employment Security Act have been amended and renumbered since the events in this case occurred. The amendments, however, do not affect the language relevant here, and thus, we cite to the current sections.

*Id.* § 35A–4–401(2)(c). He contends that he is being penalized for being sixty-five years of age and thus, "not a favorable employee in the work force due to his age." He also states that under the Board's interpretation of a "retirement plan," he is ineligible for unemployment benefits.

Alternatively, Harrington argues that, as authorized by the federal statute's offset provisions, the Board should reduce the offset amount by fifty percent, the amount of retirement benefit attributable to his own employee contribution, as opposed to that of the employer.

The Board argues that the Utah Employment Security Act requires the Department of Employment Security to reduce a claimant's unemployment benefits by one hundred percent of his or her retirement benefits, which include "social security." Utah Code Ann. § 35A–4–401(2)(c) (Supp.1996). The Board asserts that its position is not merely an agency interpretation; rather it is required by Utah law and permitted by federal law.

On October 20, 1976, Congress enacted the Unemployment Compensation Amendments of 1976, which mandated that states make a number of significant changes to their state laws, so as to comply with provisions for certification for both the Federal Unemployment Tax Act and the Social Security Act. *See* Unemployment Compensation Amendments of 1976, Pub.L. No. 94–566, 90 Stat. 2667. Section 3304(a)(15) of the Federal Unemployment Tax Act specifies the minimum conditions under which a state must reduce unemployment benefits by Social Security and other pension benefits, in order to receive federal certification of state unemployment compensation laws. Section 3304(a) provides, in pertinent part:

(a) Requirements. The Secretary of Labor shall approve any State law submitted to him, within 30 days of such submission, which he finds provides that—

. . . .

(15) the amount of compensation payable to an individual for any week which begins after March 31, 1980, and which begins in a period with respect to which such individual is receiving a governmental or other pension, retirement or retired pay, annuity, or any other similar periodic payment which is based on the previous work of such individual shall be reduced (but not below zero) by an amount equal to the amount of such pension, retirement or retired pay, annuity, or other payment, which is reasonably attributable to such week except that—

(A) the requirements of this paragraph shall apply to any pension, retirement or retired pay, annuity, or other similar periodic payments only if—

(i) such pension, retirement or retired pay, annuity, or similar payment is under a plan maintained (or contributed to) by a base period employer or chargeable employer . . .

. . . .

(B) the State law may provide for limitations on the amount of any such a reduction to take into account contributions made by the individual for the pension, retirement or retired pay, annuity, or other similar periodic payment.

26 U.S.C.A. § 3304(a) (West 1989 & Supp. 1997). Congress explained that the legislative intent behind the new amendment was to ensure that "[s]tates would be required to reduce the unemployment compensation of an individual by the amount of any public or private pension (*including social security retirement benefits* and railroad retirement annuities) based on the claimants' previous employment." Unemployment Compensation Amendments of 1976, Pub.L. No. 94–566, 1976 U.S.C.C.A.N. (90 Stat. 2667) 6040 (emphasis added).

The Utah Legislature, in accord with federal law, chose not to adopt the offset limitation permitted by section 3304(a)(15)(B); that is, eliminating employee contributions to a retirement plan from the offset. As a result, section 35A–4–401(1)(c) of the Utah Code provides that in computing an unemployed worker's benefits:

The "weekly benefit amount" of an individual who is receiving, or who is eligible to receive, based upon the individual's previous employment, a pension, which includes a governmental, *social security,* or

other pension, retirement or disability retirement pay, under a plan maintained or contributed to by a base-period employer is the "weekly benefit amount" which is computed under this section *less 100% of such retirement benefits,* that are attributable to a week, disregarding any fraction of $1.

Utah Code Ann. § 35A–4–401(2)(c) (Supp. 1996) (emphasis added).

Like Utah, several other state legislatures have adopted an offset for Social Security benefits in excess of that required by the federal statute and elected not to reduce the offset by the amount of the retirement or other similar periodic payment benefit attributable to the worker's own contribution. Federal circuit courts that have interpreted these states' statutes have upheld this application of section 3304(a)(15)(A)(i). *See, e.g., Edwards v. Valdez,* 789 F.2d 1477, 1482 (10th Cir.1986); *Rivera v. Becerra,* 714 F.2d 887, 893 (9th Cir.1983), *cert. denied,* 465 U.S. 1099, 104 S.Ct. 1591, 80 L.Ed.2d 124 (1984); *Mayberry v. Adams,* 745 F.2d 729, 730 (1st Cir.1984) (per curiam); *Watkins v. Cantrell,* 736 F.2d 933, 938–39 (4th Cir.1984); *Bowman v. Stumbo,* 735 F.2d 192, 197 (6th Cir. 1984); *see generally* Daniel E. Feld, Annotation, *Right to Unemployment Compensation as Affected by Receipt of Social Security Benefits,* 56 A.L.R.3d 552, § 4 (Supp.1996) (compiling cases that hold state unemployment compensation is affected by receipt of Social Security benefits).

■ The federal circuit courts have concluded that, although state laws must comply with the federal minimum standards, unemployment insurance is a *joint state-federal* program and, thus, "the states have considerable flexibility to adopt their own rules." *Cabais v. Egger,* 690 F.2d 234, 240 (D.C.Cir. 1982) (stating impact of states' law varies "depending on whether a state chooses to exceed federal minimum standards"); *see also Edwards,* 789 F.2d at 1479, 1481–82 (rejecting claimants' argument that federal statute set maximum pension-offset level and that Colorado statute implementing federal law exceeded that level); *Watkins,* 736 F.2d at 943 (holding "states are free to offset pension and retirement benefits from unemployment insurance benefits in excess of that required by the federal statute").[4] This interpretation is supported by the Secretary of Labor's directive issued to the states regarding their obligation to implement an offset provision into their state laws. This directive, in the form of Unemployment Insurance Program Letter No. 7–81, which discusses the Unemployment Compensation Amendments, advised the states, in pertinent part, that

> [s]ection 3304(a)(15), FUTA [Federal Unemployment Tax Act] as amended by P.L. 96–364 [Unemployment Compensation Amendments], reflects only the *minimum* conditions under which deduction must be required by State law for certification under FUTA. Although *a State may broaden the scope of its deduction of pension payments beyond the conditions in which deduction is required under Federal law,* it may not adopt less stringent conditions which fall short of the Federal requirement.

Unemployment Insurance Program Letter 7–81 (Nov. 7, 1980), 47 Fed.Reg. 29,905, 29,-906 (1982) (emphasis added). We adopt this interpretation of the federal statute as establishing minimum conditions, which may be exceeded.

■ We further conclude that the Utah statute unambiguously requires the Board to offset unemployment benefits by all Social Security retirement benefits received.[5] *Cf.*

---

**4.** Petitioner cites *Commissioner of Labor v. Renfroe,* 253 Ark. 380, 486 S.W.2d 73 (1972), in support of his contention that Social Security benefits should not offset unemployment benefits. This decision, however, is inapplicable because it was based on the Arkansas Employment Security Law that was in effect at that time, which was subsequently amended in 1977. *See Hampton v. Daniels,* 2 Ark.App. 83, 616 S.W.2d 757, 759 (1981) (holding reduction of claimant's unemployment benefits mandated by statute which

included offset for retirement benefits received from Social Security Administration).

**5.** In accordance with the Utah statute, the Industrial Commission adopted Rule 562–401–207, which specifically provides that

> [r]etirement income is defined as a pension or plan, paid for at least in part by an employer as contrasted to a IRA, KEOGH or other savings program which provides periodic pay-

*Brinkerhoff v. Forsyth,* 779 P.2d 685, 686 (Utah 1989) (stating "[w]here statutory language is plain and unambiguous, this Court will not look beyond the same to divine legislative intent. Rather, we are guided by the rule that a statute should generally be construed according to its plain language."); *accord Salt Lake Child & Family Therapy Clinic v. Frederick,* 890 P.2d 1017, 1020 (Utah 1995) (" 'When language is clear and unambiguous, it must be held to mean what it expresses, and no room is left for construction.' " (citation omitted)). It is clear in both the federal and state statutes that the offset provisions encompass Social Security retirement benefits. *See Edwards,* 789 F.2d at 1482 (stating language of section 3304(a)(15)(A)(i) is clear and compels only one interpretation: it "means that social security benefits are to offset unemployment benefits if the base period employer makes social security contributions"); *accord Rivera,* 714 F.2d at 893. Thus, we hold that under section 35A–4–401, all Social Security retirement benefits must offset unemployment benefits.

■ Harrington also asserts that Utah's interpretation of the federal statute violates his equal protection rights under the United States Constitution. In addressing a similar argument, the *Edwards* court held that Colorado's interpretation of section 3304(a)(15)(A)(i) as requiring application of the offset to all Social Security recipients [6] did not violate the Equal Protection Clause of the United States Constitution because there were "plausible reasons for selecting social security recipients." 789 F.2d at 1483. First, Social Security "duplicates unemployment insurance as a public wage-replacement program." *Id.* Second, "[t]he blanket application of the offset to all social security recipients also may be justified on the basis of ease of administration." *Id.; see also Wat-*

*kins,* 736 F.2d at 945; *Rivera,* 714 F.2d at 895; *McKay v. Horn,* 529 F.Supp. 847, 861–64 (D.N.J.1981). Likewise, we find no merit in Harrington's constitutional challenge to the Utah Legislature's application of section 3304(a)(15)(A)(i) for the foregoing reasons and because the state has an interest in maintaining the financial integrity of its unemployment compensation program. *See Edwards,* 789 F.2d at 1483; *Watkins,* 736 F.2d at 945; *Rivera,* 714 F.2d at 895; *McKay,* 529 F.Supp. at 861–64. We further note that, although Harrington characterizes the Legislature's application of section 3304(a)(15)(A)(i) as harsh, the judiciary is not "licensed to attempt to soften the clear import of Congress' chosen words whenever a court believes those words lead to a harsh result." *United States v. Locke,* 471 U.S. 84, 95, 105 S.Ct. 1785, 1793, 85 L.Ed.2d 64 (1985). Arguments to change the law should be addressed to the Utah Legislature and/or Congress.

### No-fault Overpayment

■ Finally, Harrington asserts that even if under section 35A–4–401(2)(c), Social Security benefits offset unemployment benefits, he should not be liable for a no-fault overpayment. Section 35A–4–406 of the Utah Code provides that

> If any person has received any sum as benefits under this chapter to which under a redetermination or decision he was not entitled, and it has been found that he was without fault in the matter, he is not liable to repay the sum but shall be liable to have the sum deducted from any future benefits payable to him.

Utah Code Ann. § 35A–4–406(5)(a) (Supp. 1996). Harrington claims that to penalize him for a situation which he did not create and for which he lacks the resources to pay would create a tremendous hardship. Ac-

---

ments following discontinuance of service to an individual who qualifies for the payment because of age, length of service, disability or combination of these qualifications. . . .

. . . .

. . . [I]f the claimant is entitled to a pension under the *Social Security program,* and any base period employer contributed to Social Security, regardless of whether the annuity is

based on that employment, 100% of the Social Security benefit would be deductible.

Utah Admin. Code R562–401–207(2)(a), (c) (1996) (emphasis added).

**6.** *See* Colo.Rev.Stat. § 8–73–110(3)(a) (1986) (requiring an individual's weekly unemployment benefits to be reduced (but not below zero) by the prorated amount of Social Security).

cordingly, Harrington requests that the Board waive the no-fault overpayment. The Board argues, on the other hand, that Harrington has effectively received an interest-free loan, which it is highly unlikely he will ever have to repay.

Under section 35A–4–406(5)(a) of the Utah Code, Harrington "is not liable to repay the sum but shall be liable to have the sum deducted from any future [unemployment] benefits payable to him." Utah Code Ann. § 35A–4–406(5)(a) (Supp.1996). As respondent points out, because Harrington is entitled to receive Social Security benefits, which will be deducted from any unemployment benefits to which he may be entitled in the future, "it is difficult to imagine any circumstances in which the Petitioner will again become eligible for unemployment insurance benefits from which the overpayment can be deducted."

Moreover, even if Harrington becomes eligible for unemployment benefits, under Rule 562–406–503 of the Utah Administrative Code, the overpayment would offset only one-half of the amount Harrington would be entitled to receive. Finally, if Harrington becomes eligible for future unemployment benefits and the offset is too onerous, he could request a waiver of the overpayment recovery pursuant to section 35A–4–406(5)(b) of the Utah Code. Under this section, the Division of Employment Development may grant a waiver if Harrington proves he "has the inability to meet more than the basic needs of survival for an indefinite period lasting at least several months." Utah Code Ann. § 35A–4–406(5)(b) (Supp.1996). In short, we fail to understand how the no-fault overpayment would create a hardship.

## CONCLUSION

Under the plain language of section 35A–4–401(2)(c) of the Utah Code and Rule 562–401–207(2)(c) of the Utah Administrative Code, the Board correctly determined that all of Harrington's Social Security retirement benefits offset his unemployment benefits, and thus, he was not entitled to unemployment benefits. This interpretation is consistent with decisions of other courts interpreting similar state statutes. Moreover, section 35A–4–406(5)(a) of the Utah Code clearly provides that Harrington is liable for a no-fault overpayment in the amount of $5967, which he will likely never have to repay.

The Board's order denying Harrington's claim for unemployment benefits and ordering him liable for a no-fault overpayment is affirmed.

DAVIS, P.J., and ORME, J., concur.