2001 UT App 323

Tracey J. FLORENCE, Petitioner,

v.

DEPARTMENT OF WORKFORCE SERVICES, Respondent.

No. 20000700–CA.

Court of Appeals of Utah.

Nov. 1, 2001.

Michael E. Bulson, Utah Legal Services, Inc., Ogden, for Appellant.

Lorin R. Blauer, Department of Workforce Services, Salt Lake City, for Appellee.

Before Judges GREENWOOD, JACKSON, and ORME.

## OPINION

ORME, Judge:

¶ 1 Petitioner Tracey J. Florence appeals a decision of the Department of Workforce Services Appeals Board (the Appeals Board) affirming a reduction in her unemployment benefits by reason of her receipt of Social Security benefits and remanding her case to the Department of Workforce Services (Workforce Services) for a redetermination of an initially assessed $722 overpayment of unemployment benefits. We affirm.

## BACKGROUND

¶ 2 Florence, a hearing-impaired Utah resident, had for some time been receiving Social Security Disability Insurance (SSDI) benefits. "SSDI benefits are provided through a[] [federally funded and administered] insurance program and are only available to disabled persons who have the requisite work history and have contributed to the Social Security program," *Nelson v. Betit*, 937 P.2d 1298, 1301 (Utah Ct.App.1997), and who, because of their disability, are unable to engage in substantial gainful activity. *See* 42 U.S.C.A. § 423(a)(1)(D), (d)(1)(A) (West

Supp.2001).[1] Therefore, although the record contains no explicit information as to Florence's work history prior to her becoming eligible for SSDI benefits, we assume that Florence worked for some time prior to her receipt of SSDI benefits, that she made the requisite Social Security contributions, and that she withdrew from the workforce due to her disability.

¶ 3 In February of 1998, apparently pursuant to 42 U.S.C.A. § 422(c) (West Supp. 2001),[2] Florence began to work for the Internal Revenue Service (IRS) while still receiving SSDI benefits.[3] In October of 1998, the IRS furloughed Florence, and she applied with Workforce Services for unemployment benefits. Workforce Services determined Florence to be eligible to receive unemployment benefits as of November 1998.

¶ 4 Along about July of 1999, Workforce Services received information from the Social Security Administration alerting Workforce Services to Florence's receipt of SSDI benefits during the same time she had received unemployment benefits. That information prompted Workforce Services to offset Florence's future unemployment benefits by the amount of her SSDI benefits. Workforce Services also notified Florence of a $722 "fault overpayment"[4] to her of unemployment benefits for the period between November 22, 1998 and January 30, 1999.

¶ 5 Florence filed an administrative appeal of Workforce Services' decision. The Appeals Board affirmed Workforce Services' decision to offset her unemployment benefits by her SSDI benefits and remanded to Workforce Services for a redetermination of the amount and status—fault or no-fault—of the overpayment. She now petitions this court to review her case.

## ISSUE AND STANDARD OF REVIEW

¶ 6 We must decide whether the Appeals Board erred in determining that, under Utah Code Ann. § 35A–4–401(2)(c) (Supp.2000), unemployment benefits must be offset by SSDI benefits received for the same time period and whether that interpretation of the Utah Code conflicts with the Federal Unemployment Tax Act, 26 U.S.C.A. §§ 3301–11 (West 1989 & Supp.2001).

> [W]e may grant relief from an agency action if the agency "has erroneously interpreted ... the law." " 'We review statutory interpretations by agencies for correctness, giving no deference to the agency's interpretation, unless the statute grants to the agency the discretion to interpret the statute.' "

*VanLeeuwen v. Industrial Comm'n,* 901 P.2d 281, 283 (Utah Ct.App.) (citations omitted), *cert. denied,* 910 P.2d 426 (Utah 1995).

## ANALYSIS

¶ 7 Some background information regarding unemployment insurance is essential to an understanding of this case.

Unemployment insurance in this country has been a joint federal-state undertaking

---

1. Because none of the relevant portions of the state and federal statutes cited herein have been materially changed since the events giving rise to this case, we cite the current version of those provisions in this opinion.

2. 42 U.S.C.A. § 422(c) (West Supp.2001) allows a person receiving SSDI benefits a trial work period where, for any nine out of sixty consecutive months, the person may work to test her ability to return to the labor force while still receiving SSDI benefits and without forfeiting her continued eligibility for those benefits if she proves unable to return permanently to the workforce. *See id.*

3. It appears that Florence did not actually receive SSDI benefit checks during the period between November 28, 1998 and January 30, 1999. However, Florence acknowledges she ultimately received SSDI benefits that accrued during that

period. The record is unclear both as to the amount of SSDI benefits Florence eventually received for the period between November 28, 1998 and January 30, 1999, and as to when she received those benefits.

4. If a person is determined to be at fault in their receipt of an overpayment of unemployment benefits then the person "shall repay the sum, or shall, in the discretion of the division, have the sum deducted from any future benefits payable to him, or both." Utah Code Ann. § 35A–4–406(4)(b) (1997). If the person is not at fault in the receipt of an overpayment then the person "is not liable to repay the sum but shall be liable to have the sum deducted from any future [unemployment] benefits payable to him." *Id.* § 35A–4–406(5)(a).

since first established under Title IX of the Social Security Act of 1935. In general, Congress has afforded great discretion to the states in the design and operation of their unemployment insurance programs, particularly in the establishment of benefit structures and qualifying requirements. Congress, however, has established a limited number of "fundamental standards" that states must meet in order to receive the benefits of federal certification of their programs. Among the "fundamental standards" with which states must comply is the pension offset requirement set forth in [26 U.S.C.A.] § 3304(a)(15).

Prior to 1976, some states allowed retired individuals who received social security or public or private pensions to receive unemployment insurance benefits even though they actually had withdrawn from the labor force. In response, Congress enacted § 3304(a)(15) in 1976 to require, effective September 30, 1979, all states to offset an individual's unemployment insurance compensation by the amount of any public or private pension or other similar periodic retirement payment, including social security and railroad retirement benefits, based on the individual's previous employment.

*Watkins v. Cantrell,* 736 F.2d 933, 937 (4th Cir.1984) (internal citations omitted). *See Cabais v. Egger,* 690 F.2d 234, 235–36 (D.C.Cir.1982). The pension offset requirement of section 3304 states in relevant part:

(a) Requirements. The Secretary of Labor shall approve any State law submitted to him, within 30 days of such submission, which he finds provides that—

. . .

(15) the amount of compensation payable to an individual for any week which begins after March 31, 1980, and which begins in a period with respect to which such individual is receiving a governmental or other pension, retirement or retired pay, annuity, or any other similar periodic payment which is based on the previous work of such individual shall be reduced (but not below zero) by an amount equal to the amount of such pension, retirement or retired pay, annuity, or other payment, which is reasonably attributable to such week except that—

(A) the requirements of this paragraph shall apply to any pension, retirement or retired pay, annuity, or other similar periodic payments only if—

(i) such pension, retirement or retired pay, annuity, or similar payment is under a plan maintained (or contributed to) by a base period employer or chargeable employer. . . .

26 U.S.C.A. 3304 (West Supp.2001).

¶ 8 In order to comply with the pension offset requirement of the federal statute, and thus qualify Utah's unemployment insurance program for the benefits of federal certification, the Utah Legislature enacted this provision:

The "weekly [unemployment] benefit amount" of an individual who is receiving, or who is eligible to receive, based upon the individual's previous employment, a pension, which includes a governmental, social security, or other pension, retirement or disability retirement pay, under a plan maintained or contributed to by a base-period employer is the "weekly [unemployment] benefit amount" which is computed under this section less 100% of such retirement benefits, that are attributable to a week, disregarding any fraction of $1.

Utah Code Ann. § 35A–4–401(2)(c) (Supp. 2000).

¶ 9 This appeal requires us to determine first whether SSDI benefits qualify as the type of pension payments requiring an offset against unemployment benefits. Florence argues that 26 U.S.C.A. § 3304(a)(15) (West Supp.2001) does not allow an offset of SSDI benefits against unemployment benefits. She then asserts that Utah Code Ann. § 35A–4–401(2)(c) (Supp.2000) "should be interpreted consistent with the federal statute it implements" and that it must also, then, prohibit an offset of SSDI benefits against unemployment benefits. We disagree and conclude that state law requires an offset of SSDI benefits against unemployment benefits and that federal law permits such an offset.

**A. Utah Code Ann. § 35A–4–401(2)(c)**

¶ 10 We begin our analysis with an examination of the plain language of Utah Code Ann. § 35A–4–401(2)(c) (Supp.2000). *See Arredondo v. Avis Rent A Car Sys., Inc.,* 2001 UT 29, ¶ 12, 24 P.3d 928 (" ' "When faced with a question of statutory construction, we look first to the plain language of the statute." ' ") (citations omitted). Section 401(2)(c) defines the types of benefits that must offset unemployment benefits. The plain language of the section requires an offset against unemployment benefits of "pension" payments that are (1) "based upon the individual's previous employment" and (2) made "under a plan maintained or contributed to by a base-period employer." Utah Code Ann. § 35A–4–401(2)(c) (Supp. 2000). Preliminarily, we observe that SSDI benefits fit the general definition of a "pension" because they are "a fixed sum paid regularly . . . to a person following his retirement from service (as due to age *or disability* )." *Webster's Third New International Dictionary* 1671 (1993) (emphasis added). Additionally, because "SSDI benefits . . . are only available to disabled persons who have the requisite work history," *Nelson v. Betit,* 937 P.2d 1298, 1301 (Utah Ct.App.1997) (citing 42 U.S.C.A. § 423(a)(1)(A), (a)(1)(D), (c)(1) (West 1991)), they are based on the individual's previous work. Finally, in *Harrington v. Industrial Comm'n,* 942 P.2d 961 (Utah Ct.App.1997), we rejected the contention "that because contributions to the Social Security System by both an employer and an employee are required by federal law and not made pursuant to an employment contract, Social Security benefits are not a 'plan maintained or contributed to by a base-period employer.'" *Id.* at 963 (quoting Utah Code Ann. § 35A–4–401(2)(c) (1997)). *See id.* at 964–66. SSDI benefits are, therefore, received under a plan maintained or contributed to by a base period employer and clearly fall within the definition of those types of benefits requiring an offset under section 401(2)(c).

¶ 11 Furthermore, the Utah Legislature explicitly lists "disability retirement pay" as an example of the type of pension payments requiring an offset against unemployment benefits. Utah Code Ann. § 35A–4–401(2)(c) (Supp.2000). "[R]etire" means "to withdraw from office, public station, business, occupation, or active duty." *Webster's Third New International Dictionary* 1939 (1993). We see no other permissible reading of "disability retirement pay" than that it indicates benefits based on previous employment, and received under a plan maintained or contributed to by a base period employer, paid upon withdrawal from the workforce due to disability; in other words, SSDI-type payments. The plain language of section 401(2)(c) clearly encompasses benefits based on an individual's previous employment and received upon retirement, i.e., withdrawal from the workforce, due either to old age or to disability. Accordingly, we conclude that SSDI benefits must be offset against unemployment benefits received for the same time period.

¶ 12 Our interpretation of section 401(2)(c) is supported by the overall scheme and purpose of the SSDI and unemployment insurance programs. A fundamental prerequisite to receipt of SSDI benefits is one's *"inability* to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.A. § 423(a)(1)(D), (d)(1)(A) (West Supp.2001) (emphasis added). On the other hand, a fundamental prerequisite to receipt of unemployment benefits is that one *"is able* to work and *is available* for work during each and every week with respect to which the individual made a claim for benefits." Utah Code Ann. § 35A–4–403(1)(c) (Supp.2000) (emphasis added). SSDI is thus designed to benefit persons unable to work for an extended period of time due to a disability, while unemployment insurance is designed to benefit persons able and willing to work but who are unable to find employment for a relatively limited period of time. It is, therefore, antithetical to the eligibility requirements for unemployment benefits to be concurrently deemed eligible to receive SSDI benefits. Apparently, due only to her exercise of the right to a trial work period under the SSDI program, cou-

pled with a lack of timely communication between the Social Security Administration and Workforce Services, was Florence deemed eligible for both full SSDI benefits and full unemployment benefits during the same time period.[5] While issues of Florence's actual eligibility for one or the other— SSDI benefits or unemployment benefits— are not before us, we readily conclude that when one is somehow deemed eligible to receive both SSDI and unemployment benefits, the schemes of both programs are best served by offsetting one set of benefits against the other.

¶ 13 In summary, Utah Code Ann. § 35A–4–401(2)(c) (Supp.2000) requires that SSDI benefits be offset against unemployment insurance benefits received for the same time period. Therefore, Workforce Services did not err in reducing Florence's unemployment benefits by the amount of her SSDI benefits and in assessing an overpayment for the period during which Florence received both full SSDI and full unemployment benefits.

### B. 26 U.S.C.A. § 3304(a)(15)

▉ ¶ 14 We next address whether our interpretation of Utah Code Ann. § 35A–4–401(2)(c) (Supp.2000) is consistent with 26 U.S.C.A. § 3304(a)(15) (West Supp.2001). To conclude that Utah's statute is in harmony with the federal statute, we need not determine that 26 U.S.C.A. § 3304(a)(15) also *requires* an offset of SSDI benefits against unemployment benefits. A conclusion that section 3304(a)(15) at least *permits* an offset of SSDI benefits will suffice.

¶ 15 In *Harrington v. Industrial Comm'n,* 942 P.2d 961 (Utah Ct.App.1997), we held that section 3304(a)(15) "establish[es] minimum conditions, which may be exceeded." *Id.* at 965. We there adopted the position of the Secretary of Labor that "*a State may broaden the scope of its deduction of pension payment beyond the conditions in which deduction is required under Federal law.*" *Id.* (quoting Unemployment Insurance Program

Letter 7–81 (Nov. 7, 1980), 47 Fed.Reg. 29,-905, 29,906 (1982)) (emphasis in original). In *Harrington* we relied on federal case law to reach the conclusion that states may expand the categories of pension payments that require an offset against unemployment benefits. *See id.* (citing *Edwards v. Valdez,* 789 F.2d 1477, 1479, 1481–82 (10th Cir.1986); *Watkins v. Cantrell,* 736 F.2d 933, 943 (4th Cir.1984); *Cabais v. Egger,* 690 F.2d 234, 240 (D.C.Cir.1982)). We remain convinced that even if section 3304(a)(15) does not itself require offset of a particular type of pension benefits, such as SSDI, federal law does not restrict states from requiring offset of pension benefits beyond the scope of the offset requirements of section 3304(a)(15).

¶ 16 Florence's argument that section 3304(a)(15) prohibits an offset of SSDI benefits against unemployment benefits relies primarily on the mistaken notion that "retirement benefits" and "disability benefits" are mutually exclusive categories. She asserts that by using the words "pension" and "retirement benefits" to describe the types of payments that must offset unemployment benefits, federal law does not contemplate, and therefore prohibits, the offsetting of "disability benefits" against unemployment benefits.

▉ ¶ 17 We are not persuaded by this argument. As we have already noted, a "pension" is "a fixed sum paid regularly ... to a person following his retirement from service (as due to age *or disability* )," and to "retire" simply means "to withdraw from office, public station, business, occupation, or active duty." *Webster's Third New International Dictionary* 1671, 1939 (1993) (emphasis added). Given the plain meaning of these terms, SSDI benefits fit neatly within the terms "pension" and "retirement benefits," and the language of section 3304(a)(15) can easily be read to require an offset of SSDI benefits against unemployment benefits. For the present purpose, it is enough to note the section at least permits such an offset.

---

**5.** We do not conclude that Florence intended to take advantage of the system by applying for unemployment insurance benefits while remaining eligible for SSDI benefits. On the contrary, it appears from the record that she was not actually receiving SSDI checks during at least part of the time she was receiving unemployment checks, and she may well have assumed that due to her successful employment with the IRS she had lost her eligibility for SSDI benefits.

¶ 18 Because section 3304(a)(15) sets minimum standards that states may exceed, and because section 3304(a)(15) plainly does not prohibit the offset of SSDI benefits against unemployment benefits, we conclude that our interpretation of Utah Code Ann. § 35A–4–401(2)(c) (Supp.2000) is not at odds with 26 U.S.C.A. § 3304(a)(15) (West Supp.2001) and that it does not jeopardize federal certification of Utah's unemployment insurance program.

## CONCLUSION

¶ 19 The decision of the Appeals Board is affirmed. Consistent with its order, it may proceed to remand the case to Workforce Services to determine the amount of the overpayment properly to be assessed to Florence and whether it should be handled as a fault or no-fault overpayment.[6] *See* Utah Code Ann. §§ 35A–4–401(2)(c), –406(4)(b), (5)(a) (1997 & Supp.2000).

¶ 20 WE CONCUR: PAMELA T. GREENWOOD, Presiding Judge, NORMAN H. JACKSON, Associate Presiding Judge.

---

6. Our thorough review of the record in this case suggests no basis on which Florence could properly be held at fault for the overpayment.