LUCERO, Circuit Judge,
dissenting.
Because the interpretation of 21 U.S.C. § 848(q) constructed by the majority is precluded by the plain meaning of the statutory language, I respectfully dissent. In adopting § 848(q), Congress unequivocally provided for appointment and payment of one or more attorneys to represent defendants in 28 U.S.C. § 2254 habeas proceedings challenging state-imposed death sentences. Using words of laser-like precision, Congress directed that “each attorney so appointed shall represent the defendant throughout every subsequent stage of available judicial proceedings ... and shall also represent the defendant in such ... proceedings for executive or other clemency as may be available to the defendant.” § 848(q)(8) (emphasis added). Prior to the instant case, at least one district of this circuit, the Western District of Oklahoma, has authorized the payment of counsel for § 2254 petitioners in subsequent state clemency proceedings. This practice has been approved by a panel of this court by unpublished disposition. See Hooker v. Mullin, Nos. 00-6181. & 00-6186 (10th Cir. Dec. 10, 2002) (order appointing counsel pursuant to § 848(q)(8) for state clemency proceeding). By today’s ruling, the majority would avoid the congressional mandate and disturb our circuit practice by the expedient of two arguments: (1) that § 848 relates to federal criminal trials and appeals and the provisions of § 848(q) must be qualified as applying only to federal proceedings; and (2) to afford the statute its plain meaning would effect an absurd result. Both propositions are incorrect.
I
This case hinges on the interpretation of 21 U.S.C. § 848(q). The Supreme Court has “stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.” Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). Thus, as always, we begin “with the language of the statute,” Duncan v. Walker, 533 U.S. 167, 172, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001), and we must “give effect, if possible, to every clause and word,” id. at 174, 121 S.Ct. 2120 (quotation omitted). “When the meaning of the statute is clear, it is both unnecessary and improper to resort to legislative history to divine congressional intent.” Edwards v. Valdez, 789 F.2d 1477, 1481 (10th Cir. 1986). As Justice Holmes once wrote, ‘We do not inquire what the legislature meant; we ask only what the statute means.” Oliver Wendell Holmes, Collected Legal Papers 207 (1920), cited in Schwegmann Bros. v. Calvert Distillers Corp., 341 U.S. 384, 397, 71 S.Ct. 745, 95 L.Ed. 1035 (1951) (Jackson, J., concurring).
Section 848(q)(4)(B) provides:
In any post conviction proceeding under section 2254 or 2255, seeking to vacate or set aside a death sentence, any defendant who is or becomes financially unable to obtain adequate representation or ... other reasonably necessary services shall be entitled to the appointment of one or more attorneys and the *1152 furnishing of such other services in accordance with paragraphs (5), (6), (7), (8), and (9).
21 U.S.C. § 848(q)(4)(B). Because this provision includes § 2254 proceedings, a path exclusive to state prisoners, it expressly applies to petitioners seeking federal habeas relief from a state-imposed death sentence. Paragraph (8) of the same section provides, in words that I repeat, “each attorney so appointed shall represent the defendant throughout every subsequent stage of available judicial proceedings ... and shall also represent the defendant in such ... proceedings for executive or other clemency as may be available to the defendant.” Id. § 848(q)(8) (emphasis added). Thus, under the plain language of the statute, a state prisoner who seeks federal habeas relief is expressly entitled to federally funded counsel at subsequent state clemency proceedings.
In Hill v. Lockhart, 992 F.2d 801 (8th Cir.1993), the Eighth Circuit reached this very conclusion. According to the Hill court, “[t]he plain language of § 848(q) evidences a congressional intent to insure that indigent state petitioners receive ‘reasonably necessary’ ... clemency services from appointed, compensated counsel.”[1] Id. at 803. Although the Eleventh and Fifth Circuits have reached a different conclusion, namely that § 848(q) does not authorize federal funding for representation in state clemency proceedings, their reasoning is simply unpersuasive and contrary to the plain language of the statute. Thus, unlike the majority, I would not adopt their holdings for our circuit.
In Clark v. Johnson, 278 F.3d 459, 462-63 (5th Cir.2002), the Fifth Circuit summarily held that the phrase “proceedings for executive or other clemency as may be available to the defendant,” as used in § 848(q)(8), does not apply to state clemency proceedings. Similarly, in King v. Moore, 312 F.3d 1365, 1367-68 (11th Cir. 2002), the Eleventh Circuit determined that Congress’s intent to pay for counsel in state proceedings “is by no means clear” and agreed that the statute does not provide federal compensation for counsel at state clemency proceedings.
Adopting the reasoning of the Eleventh and Fifth Circuits, the majority concludes that the meaning of § 848(q) can be gleaned only by placing it in the context of the entire statutory scheme. Because § 848(q) is part of a statute that punishes violations of federal drug laws, outlining the trial and appellate procedures in such cases, the majority holds that “the language contained in the sections preceding and following [§ 848(q)(4)(B)] relates more *1153 directly to federal criminal trial and appeals, than to habeas cases seeking relief from state court sentences.” (Maj. Op. at 1149, 1150 (quoting King, 312 F.3d at 1367).) Moreover, the majority agrees with the Eleventh Circuit that the word “federal” is an implied modifier for “proceedings,” as it is used in § 848(q)(8). Thus, according to the majority, a habeas petitioner under this statute is entitled to federally appointed and funded counsel only at all subsequent federal proceedings.
I agree that we must view § 848(q)(8) in context, but this context includes § 848(q)(4)(B), which specifically states that funding for counsel will be provided “[i]n any post conviction proceeding” brought by state prisoners under § 2254 to vacate a death sentence, as well as in § 2255 proceedings. As stated earlier, § 848(q)(8) provides that counsel shall also represent any defendant at “proceedings for executive or other clemency as may be available to the defendant.” A state prisoner, of course, will have only state clemency proceedings available. It is not possible, therefore, to limit the language of § 848(q)(8) to federal clemency proceedings, as would the majority. Moreover, as appellant notes, the reference to “executive or other clemency,” § 848(q)(8) (emphasis added), is meaningless unless it is assumed to include state clemency, as there is no other form of clemency in the federal system. Reading § 848(q)(8) in context does not mean ignoring its plain text.[2]
The extraordinary steps that the Fifth Circuit, the Eleventh Circuit, and the panel majority have taken to justify their result subject them to the same type of criticism leveled against Church of the Holy Trinity v. United States, 143 U.S. 457, 12 S.Ct. 511, 36 L.Ed. 226 (1892). In Holy Trinity, a church in New York had contracted with an Englishman to have him cross the Atlantic and become its rector and pastor. Id. at 457-58, 12 S.Ct. 511. Unmoved by the piety of the Holy Trinity parishioners, the United States government claimed that this contract violated a federal statute that made it illegal for any person to “in any way assist or encourage the importation or migration, of any alien ... into the United States ... under contract or agreement ... to perform labor or service of any kind in the United States.” Id. at 458, 12 S.Ct. 511. Faced with this statute, the Court concluded that Congress could not possibly have intended to cover a contract between a church and its rector, as “the intent of congress was simply to stay the influx of ... cheap, unskilled labor.” Id. at 465, 12 S.Ct. 511. Thus, the Court decided that “labor” had to mean manual labor, even though that was not what the statute said. In a recent commentary, Justice Sealia excoriated the Court’s decision in Holy Trinity as an example of the tendency of common-law judges to ignore the plain meaning of a statute in order to give effect to the supposed unexpressed intent of the legislature. As Justice Sealia noted, “Congress can enact foolish statutes as well as wise ones, and it is not for the courts to decide which is which and rewrite the former.” Antonin Sealia, A Matter of Interpretation: Federal Courts and the Law 20 (1997).
II
This gets me to the majority’s second proposition, that applying the statute literally would produce absurd results. I am equally unpersuaded by this argument. In order “to justify a departure from the *1154 letter of the law” on the ground of absurdity, “the absurdity must be so gross as to shock the general moral or common sense.” Crooks v. Harrelson, 282 U.S. 55, 60, 51 S.Ct. 49, 75 L.Ed. 156 (1930); see also Payne v. Fed. Land Bank of Columbia, 916 F.2d 179, 182 (4th Cir.1990) (noting that the absurdity exception applies only when “the absurdity and injustice of applying the provision [literally] to the case would be so monstrous that all mankind would without hesitation, unite in rejecting the application”) (quoting Sturges v. Crowninshield, 17 U.S. (4 Wheat.) 122, 202-03, 4 L.Ed. 529 (1819)). While, to the majority, funding counsel for state proceedings subsequent to a federal habeas petition might not be a wise use of the federal purse, reading the statute literally does not create an absurdity “so gross as to shock the general moral or common sense.” Crooks, 282 U.S. at 60, 51 S.Ct. 49. To my mind, there is nothing absurd whatsoever about the use by Congress of its power to provide for the payment of counsel in state clemency proceedings, where such is not otherwise available, in order to satisfy its collective conscience that in this country defendants facing a death penalty following habeas may seek executive clemency as a final resort. I consider the majority’s conclusion to the contrary disturbing.
As for the majority’s proposition that, were we to afford the statute its plain meaning, successful § 2254 habeas petitioners would be entitled to payment of counsel at resulting state trials and appeals, there are three straightforward answers. First, the issue is not before us. Second, even if it were, the proposition has no potential factual basis. Section 848(q)(4)(B) states that counsel will be appointed when a defendant “is or becomes financially unable to obtain adequate representation.” If the state becomes obliged to provide counsel, “adequate representation” is available, and § 848(q)(4)(B) is no longer implicated. Under Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), states are obliged to provide counsel to indigent defendants at criminal trials. Thus, a defendant granted a new trial as a result of a successful § 2254 petition is constitutionally guaranteed counsel, and is no longer “unable to obtain adequate representation” under the statute. Under prevailing practice, indigent defendants are provided counsel at state expense. By contrast, when a state refuses to pay for counsel at clemency proceedings, the defendant remains unable to obtain adequate representation, and such representation is funded under the statute. Third, if some court at some future date read § 848(q) as requiring the appointment of counsel at new trials subsequent to a grant of habeas — even though counsel is available under state procedures — Congress, if it chooses to do so, may address the issue.
Ill
Because the plain language of 21 U.S.C. § 848(q) entitles state prisoners on death row, like Hain, to receive federal funding for representation in state clemency proceedings subsequent to the filing of a § 2254 petition, I would reverse the judgment of the district court.

. As originally enacted, § 848(q)(10) provided that services performed by counsel at a clemency hearing would be compensated at "reasonably necessary” rates. Anti-Drug Abuse Amendments Act of 1988, Pub.L. No. 100-690, Title VII, § 7001, 102 Stat. 4387, 4394. Accordingly, in Hill, the Eighth Circuit set forth two requirements that must be met in order for services performed in a state clemency proceeding to be considered "reasonably necessary” under § 848(q)(10): (1) the request must be "made as part of a non-frivolous federal habeas corpus proceeding,” and (2) state law must "providef ] no avenue to obtain compensation for these services.” 992 F.2d at 803. Congress subsequently amended § 848(q)(10), however, removing the "reasonably necessary” language and replacing it with a maximum hourly fee rate. Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, § 903(b), 110 Stat. 1318, 1318. It might be argued that this amendment eliminates the need to show that state compensation is unavailable, but, in my view, such a showing remains necessary to demonstrate that a defendant is "unable to obtain adequate representation” under § 848(q)(4)(B). See infra. In any event, both factors are met here. There is no allegation that Hain’s federal habeas petition was frivolous, and it is undisputed that Oklahoma does not fund counsel at state clemency proceedings. Thus, Hain would be entitled to funding even under the factors enunciated in Hill.

. Presumably, the majority would agree that § 848(q) applies to all capital cases, not just drug-related cases, even though § 848 is generally addressed at violations of the federal drug laws.