**Valentin SOSKIN, et al., Plaintiffs,**

v.

**Karen REINERTSON, in her official capacity as Executive Director of the Colorado Department of Health Care Policy and Financing, Defendant.**

**No. CIV. 03–RB–0529(BNB).**

United States District Court, D. Colorado.

April 16, 2003.

Mark Silverstein, Gregory R. Piche, Holland & Hart, LLP, Denver, CO, for Plaintiffs.

Ilene I. Wolf, Wheat Ridge, CO, Ann Hause, Attorney General's Office, Denver, CO, for Defendant.

## ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND DISSOLVING TEMPORARY RESTRAINING ORDER

BLACKBURN, District Judge.

This matter is before me on the plaintiffs' motion for preliminary injunction

[# 2], filed March 28, 2003. Initially, the plaintiffs sought a temporary restraining order and preliminary injunction enjoining the implementation of Colorado Senate Bill 03–176, which terminates Medicaid benefits to more than 3,500 lawful alien recipients. In an order [# 9] entered April 1, 2003, I granted the plaintiffs' motion for a temporary restraining order. For the following reasons, I deny the of plaintiffs' motion for a preliminary injunction and dissolve the extant temporary restraining order.

## I. FINDINGS OF FACT AND SUMMARY OF CLAIMS

### A. Findings of Fact.

At issue is Colorado Senate Bill 03–176 ("SB 03–176"), which was signed into law on March 5, 2003, with an effective date of April 1, 2003. The law repealed the state's optional coverage of certain qualified legal aliens in the Medicaid program, under § § 26–4–301(1)(*l*), 26–4–301(1)(m), 26–4–301(2), 26–4–301(3), C.R.S. (See Pl. Exh. A of Dec. of Piche). The Medical Services Board ("Board") is the arm of the Department of Health Care Policy and Financing ("Department") responsible for promulgating and implementing Medicaid rules and regulations. On March 14, 2003, the Board adopted MSB 03–02–11–A to facilitate implementation of SB 03–176.

SB 03–176 was enacted in response to the ingravescent fiscal exigency plaguing the State of Colorado. Over the last year the Department experienced first a four percent then another three percent cut in its budget. These budget cuts impacted client services, provider rates, and program administration and included the implementation of utilization controls to reduce medical costs. (See Trans. of Hear'g, 11:7–25, 12:12–17:16; see also Def. Hear'g Exh. B). Only when these reductions and strategies proved insufficient did the Colorado General Assembly opt to discontinue Medicaid benefits to the optional group of lawful aliens to which the plaintiffs belong.

Even then, Governor Bill Owens limited the impact of budget reductions on Medicaid by mandating other state agencies to take an additional six percent budget cut in November, 2002, while requiring the Department to take only a three percent cut. However, to achieve a balanced budget as required by the Colorado constitution, further cuts in the Medicaid program were required given that Medicaid consumes approximately twenty percent of the state's general fund.

### B. Procedural history and statement of claims.

In response to plaintiffs' motion for temporary restraining order, this court issued a temporary restraining order on April 1, 2003, temporarily enjoining and restraining the defendant from implementing or enforcing SB 03–176. The plaintiffs' request for preliminary injunction is now before the court. On April 11, 2003, I conducted a hearing on plaintiffs' application for preliminary injunction. I received evidence in the form of testimony, declarations, and exhibits.

In support of their request for preliminary injunction, the plaintiffs claim that once SB 03–176 becomes effective, it will result in the termination of Medicaid benefits to roughly 3,500 current Medicaid recipients who, plaintiffs claim, will be denied vital medical services in violation of the United States Constitution and federal law. Plaintiffs assert that Colorado's proposed termination of Medicaid benefits to this group of legal aliens is in direct violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment and federal Medicaid law. (Mem. in Supp. of ¶'s Mtn for TRO, p. 3).

The defendant responds that federal Medicaid law requires the Department to

provide services to mandatory categorically needy individuals, but allows the State of Colorado the option to choose whether to provide services to optional categorically needy individuals. 42 U.S.C. § 1396(a)(10)(A)(i) & (ii). The defendant argues that SB 03–176 merely eliminates coverage for those optional categorically needy individuals.

Further, the defendant argues that the pretermination notice and process provided to recipients affected by SB 03–176 is sufficient. Under the Medicaid program as administered by the state, the county departments of social services ("the counties") make initial eligibility determinations. § 26–4–106(1)(a), C.R.S. The counties act and operate under the supervision of the Colorado Department of Human Services, with whom the Department has a Memorandum of Understanding governing the counties' responsibilities in determining Medicaid eligibility. In anticipation of the enactment of SB 03–176 the Department instructed the counties to review their case files and available computerized information to identify those individuals who would be affected by SB 03–176.

The Department instructed the counties to issue termination notices to aliens who were covered by the optional program prior to the effective date of SB 03–176. Aliens who were part of a mandatory Medicaid group designated by 8 U.S.C. § 1612(b)(2) remained eligible and unaffected. For any recipient for whom the county had insufficient information to determine residency status, the Department instructed the counties to send a questionnaire to the recipient requiring a response within ten (10) days, failing which the Department instructed the counties to terminate Medicaid benefits for the non-responding recipient. The plaintiffs argue that the notice provided was insufficient and untimely as a matter of constitutional and federal law.

## II. GENERAL STRUCTURE OF JOINT FEDERAL/STATE MEDICAID PROGRAM

Created by Congress in 1965, Medicaid is a complex, reticulated federal welfare program jointly funded by Congress and participating states providing medical assistance to the poor, the disabled, and other needy individuals. 42 U.S.C. § 1396. States are not required to participate in the Medicaid program. However, if a state chooses to participate, it must meet minimum federal requirements to receive federal matching funds.

Colorado elected to participate in the Medicaid program by adopting the Colorado Medical Assistance Act, part 1 of Article 4 of Title 26, C.R.S. The Department is the single state agency designated to administer the Medicaid program in Colorado. § 26–4–104(1), C.R.S. The Department has express authority to administer the Colorado Medicaid program so that it complies with the myriad federal requirements to receive federal matching funds. § 26–4–105, C.R.S.

Federal law dictates that participating states provide services for all categorically needy individuals through its Medicaid program. 42 U.S.C. § 1396a(a)(10)(A)(i); 42 C.F.R. 435.100 et. seq. In addition to this "mandatory" population, federal law allows states to choose to cover an additional "optional" population. 42 U.S.C. § 1396a(a)(10)(A)(ii); 42 C.F.R. § 435.200 et. seq. With the enactment of SB 03–176, Colorado exercised the option created by Congress to cover only the mandatory population. § 26–4–201 & 301, C.R.S.

The Personal Responsibility and Work Opportunity Reconciliation Act of 1996 ("PRWORA") implemented the federal classifications of legal immigrants which states operating designated federal programs must follow. 8 U.S.C. § 1601 et. seq. Medicaid is defined as a designated

federal benefit program. 8 U.S.C. § 1612(b)(3)(C). Federal law requires states to cover certain "qualified aliens." 8 U.S.C. § 1612(b)(2). If the individual is not a qualified alien, then a state may choose not to provide any benefits to the individual through the federal program. 8 U.S.C. § 1611(a). Through the implementation of SB 03–176, Colorado provides Medicaid services only for the mandatory qualified aliens specified in federal law. § 26–4–201(2), C.R.S.

The federal statutory scheme further provides that "a state is authorized to determine the eligibility of an alien who is a qualified alien for any designated Federal program." 8 U.S.C. § 1612(b)(1). PRWORA enumerates certain groups of qualified aliens that must be covered. These groups are identified in the exceptions set forth in 8 U.S.C. § 1612(b)(2). A state also has the option to extend benefits to all other qualified aliens. Prior to the enactment of SB 03–176, Colorado provided Medicaid coverage to the optional qualified aliens allowed by federal law. § § 26–4–301(1)(*l*) & (m), 26–4–301(2) & (3). Colorado had chosen also to operate a state-only funded prenatal program under § 26–4–301(4), C.R.S. However, the Colorado Legislature has eliminated this program in its entirety. According to the defendant, in SB 03–176 Colorado exercised the option Congress expressly created and authorized in PRWORA to exclude Medicaid benefits to qualified aliens who do not belong to one of the mandatory groups for which coverage is mandated by 8 U.S.C. § 1612(b)(2). The Colorado Legislature enacted SB 03–176 to reduce further spending in the state's current fiscal year ending on June 30, 2003.

In this case, plaintiffs ask the court to enter a preliminary injunction enjoining the implementation of SB 03–176 and the termination of Medicaid benefits to plaintiffs.

## III. RULE 65 FACTORS

A preliminary injunction constitutes extraordinary relief. A party seeking a preliminary injunction must show: 1) that there exists a substantial likelihood that the movant will prevail on the merits; 2) that the movant will suffer irreparable injury unless the injunction issues; 3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and 4) that the injunction would not be adverse to the public interest. *Lundgrin v. Claytor,* 619 F.2d 61, 63 (10th Cir.1980). I conclude that the plaintiffs have not sustained their burden to circumstantiate preponderantly the four key factors that comprise the *sine qua non* for a preliminary injunction under FED. R. CIV. P. 65.

### A. Substantial Likelihood of Success on the Merits.

### 1. Plaintiffs' equal protection argument.

Whether the plaintiffs are likely to succeed on the merits of their equal protection claim is driven by the level of scrutiny applied to plaintiffs' claim. If strict scrutiny is required, then the plaintiffs are likely to prevail. However, if only a rational basis is required, then the defendant is likely to prevail. Thus, given the circumstances unique to this case, the level of scrutiny is essentially dispositive of not only this issue specifically, but the litigation generally. I have considered the reasons stated, arguments advanced, and authorities cited by the parties. I find defendant's arguments to be cogent. Thus, I conclude that rational basis, not strict scrutiny, is apposite.

This case tests the purview of the authority of the Colorado General Assembly to budget and appropriate the state funds necessary to operate all state programs, including Medicaid. The federal Medicaid

statutory scheme provides that "a state is authorized to determine the eligibility of an alien who is a qualified alien for any designated Federal program." 8 U.S.C. § 1612(b)(1). PRWORA prescribes certain groups of qualified aliens for which coverage is mandatory. These mandatory groups are identified in the exceptions set forth in 8 U.S.C. § 1612(b)(2). The provisions of PRWORA have been challenged, and federal courts have upheld the classifications determined by Congress applying a rational basis review. *See Kiev v. Glickman,* 991 F.Supp. 1090 (D.Minn.1998); *Abreu v. Callahan,* 971 F.Supp. 799 (S.D.N.Y.1997). *See also Mathews v. Diaz,* 426 U.S. 67, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976) (applying rational basis test to alienage classifications made by federal government).

Unlike the classifications at issue in *Plyler v. Doe,* the classifications established by PRWORA leave little discretion to the states. 458 U.S. 1131, 103 S.Ct. 14, 73 L.Ed.2d 1401 (1982). Further, the facts at issue here are distinguishable from those in *Graham v. Richardson,* 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971) (applying strict scrutiny analysis to Arizona's implementation of a 15 year residency requirement not found in federal law, and pertaining to a state-only funded portion of the Pennsylvania General Assistance Program) and *Aliessa v. Novello,* 96 N.Y.2d 418, 730 N.Y.S.2d 1, 754 N.E.2d 1085 (2001) (applying strict scrutiny analysis to a state-only benefits program which applied PRWORA alienage classifications to determine eligibility). The program at issue here is not a state-only funded program as in *Graham* and *Aliessa.* Contrastingly, SB 03–176 represents the decision of the Colorado General Assembly to exercise a limited option created by Congress affecting a federal-state jointly funded component of Medicaid. Colorado's exercise of this Congressionally created option does not threaten to proliferate

divergent eligibility requirements throughout the participating states. Thus, the constitutional requirement of uniformity is not implicated by SB 03–176.

In PRWORA, Congress clearly delineated who was eligible for federally funded benefits programs by designating particular groups of aliens as either qualified or non-qualified and, if qualified, as either mandatory or optional. Under federal law, Colorado has the option to extend benefits to all other qualified aliens. In SB 03–176 Colorado exercised the option Congress authorized in PRWORA to exclude Medicaid benefits to qualified aliens who do not belong to one of the mandatory groups enumerated in 8 U.S.C. § 1612(b)(2). Thus, SB 03–176 ostensibly complies with PRWORA. In these circumstances constitutional review of Colorado's exercise of this limited option entails a rational basis analysis.

Indeed, it makes little sense to apply the rational basis standard to a Congressional exercise of its power to regulate immigration and naturalization, and then apply strict scrutiny when states attempt to exercise an option created by Congress in that same federal-state scheme. With respect to Medicaid, the federal government specifically prescribes program parameters that the states must follow to receive matching federal funds. The federal law provides the sole basis for state action. In fact, if a state does not carefully conform to these federal mandates, the state risks losing federal financial participation. In these circumstances, a limited state action authorized under the Medicaid program, a program heavily regulated by and partially funded by the federal government, should receive the same rational basis review as would the federal statutory scheme. Subjecting the state's exercise of this federally created coverage option to strict scrutiny extirpates the original deference shown to

Congress. Therefore, rational basis review applies.

A statute survives rational basis review if there is a rational relationship between the disparity of treatment and some legitimate governmental purposes. *Heller v. Doe*, 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993). The statute must be upheld on equal protection grounds if there is any reasonably conceivable state of facts that could provide a rational basis for the classification. Preserving fiscal integrity is a legitimate, rational basis for any disparate treatment resulting from the operation of a statute. *Edwards v. Valdez*, 789 F.2d 1477, 1483 (10th Cir.1986) (holding that ease of administration and preservation of the fiscal integrity of an unemployment program are legitimate government concerns).

The Colorado Legislature enacted SB 03–176 to eschew financial exsanguination. SB 03–176 represents a rational exercise of Colorado's plenary authority to govern state spending and to determine what government services can be provided consistent with the fiscal integrity constitutionally commanded in Colorado. I find and conclude that Colorado's focus on and concern for fiscal considerations is rational given the exigent and cyclopean proportions of Colorado's present and prospective fiscal crisis. Accordingly, it is probable that the defendant, will prevail on the equal protection claim. Therefore, plaintiffs have failed to demonstrate a likelihood of success on the merits as to their equal protection claim.

### 2. Plaintiffs' claim based on sufficiency of notice and process.

I further find and conclude the plaintiffs are unable to demonstrate preponderantly a likelihood of success on the merits as to their claim alleging systemic insufficiency of the termination notice and process provided to those optional Medic-aid recipients affected by SB 03–176. The plaintiffs claim these alleged insufficiencies violate their rights under the due process clause and Medicaid statutes and their implementing regulations. The evidence adduced at the hearing demonstrated the organized, comprehensive, and proactive manner the Department employed to anticipate and implement SB 03–176 consistent with extant federal and state law and regulations. Defendant's witness, Diana Maiden, Director of Client Services for the Department, testified credibly and cogently about the copious efforts of the Department vis-à-vis the counties to effectuate implementation of SB 03–176 consistent with the process due affected recipients.

Prior to the enactment of SB 03–176, the Department sent two letters to directors of the county departments of social services in the 64 counties across the state. The first letter informed the directors that SB 03–176 was progressing through the legislature. The second letter indicated that the legislation had been passed by the General Assembly but had not been signed by the Governor. This second letter also included data from the client oriented information network ("COIN") detailing the eligibility of aliens within each county.

The Department then sent a third, more detailed letter to the counties communicating the changes in Medicaid law and policy necessitated by SB 03–176. *(Trans., 61:5–25; 62:1–22)*. Roughly five days after this third letter was sent, the Department held a state-wide conference call in which over 40 county departments of social services participated. During that call the Department reviewed the agency letter with the counties in considerable detail. The Department made clear to each county that no Medicaid benefits affecting the population of recipients addressed in SB 03–176 were to be terminated before the signing of the bill. *(Trans., 63:5–24)*.

Once the bill was signed into law on March 5, 2003, the Department notified the counties, instructed them to provide notice to affected recipients, and provided information about how to assess clients, how to determine whether an alien could continue as Medicaid eligible, how to provide notices to each client, and how to calculate the forty working quarters attributable to each client which could affect an alien's continuing coverage. *(Trans., 64:2–13)*. The Department directed the counties to provide all individuals adversely affected by SB 03–176 with at least ten days notice prior to the termination of benefits. *(Trans., 72:19–24)*. If counties provided insufficient notice to a particular individual, the Department instructed the county not to terminate benefits until the individual was provided with sufficient notice.

Certainly, there may be isolated anecdotal episodes of untimely notices sent to particular individuals. However, this does not vitiate the fact that systemically the Department did all that it was required to do under due process to provide timely and sufficient notice to aliens potentially affected by SB 03–176.

For the reasons stated, arguments advanced, and authorities cited by defendant, I find and conclude that the combined efforts of the Department and the county departments of social services easily pass muster under the Due Process clause and the applicable statutes and regulations. Therefore, I find and conclude that the plaintiffs are unable to establish a likelihood of success on the merits as to their claim that the termination notice and process provided by the defendant violates their due process rights or the applicable statutes and regulations.

### B. Irreparable injury.

The plaintiffs argue that they will suffer irreparable injury absent prophylactic injunctive relief because, absent Medicaid coverage, the plaintiffs could not afford to pay the costs of their medical treatment, including, *inter alia*, nursing home and long-term care. The plaintiffs argue that defendant "disingenuously argues" that plaintiffs can be reimbursed for their out-of-pocket medical expenses. According to the plaintiffs, they lack the means to incur those expenses out of pocket, and thus, will be unable to receive necessary care.

Specifically, plaintiffs claim that Medicaid is critical to the health and well being of plaintiffs and the members of plaintiffs putative class. In many instances, plaintiffs claim that Medicaid will make the difference between life and death. *See Dec. of Noskova ¶ ¶ 9, 12; Dec. of Soskin, ¶ ¶ 5–6, 19; Dec. of Perlman, ¶ ¶ 7–9, 12; Dec. of Palko–Schraa, ¶ ¶ 2–3.* Plaintiffs clam that they require Medicaid to pay for crucial medical care, including chemotherapy, *(see Dec. of Noskova, ¶ 6)*, nursing home care *(see Dec. of Carrillo, ¶ ¶ 1; Chang, ¶ 4; Rosenthal, ¶ 2; and Shibeshi, ¶ 2)*, home care, *(see Dec. of Soskin, ¶ ¶ 10–11; Dec. of Noskova, ¶ 9; and Dec. of G. Gelfand, ¶ ¶ 6, 10)*, surgical care, *(see Dec. of Noskova, ¶ ¶ 6, 8)*, and life-sustaining prescription medications *(see Dec. of Carrillo, ¶ 5; Dec. of Tatevosian, ¶ 6; Dec. of G. Gelfand, ¶ 7; and Dec. of Y. Gelfand, ¶ 4)*. Plaintiffs argue that, without Medicaid, none of the plaintiffs will be able to pay for these services.

Defendant claims that plaintiffs' only support for the contention of irreparable injury is contained in signed declarations that this court admitted into evidence. Defendant claims that the declarations contain conclusions, not evidence, regarding the harm to be suffered by the plaintiffs. Further, defendant argues that other mitigating resources may still be available to these plaintiffs, such as medical assistance through the Health and

Medical Care Program for Old Age Pension, Colorado Indigent Care Program, or the Health and Medical Care Program. Further, Senate Bill 03–266 ("SB 03–266") will continue Medicaid coverage for those optional legal immigrants receiving Medicaid benefits in nursing facilities. Thus, defendant argues that it is unlikely that plaintiffs who are institutionalized will lose their Medicaid eligibility.

I find and conclude that this factor weighs more heavily in favor of the plaintiffs. Even a temporary suspension of coverage would result in irreparable injury to many of the plaintiffs.

### C. Threatened injury to plaintiffs versus threatened injury to defendant.

■ To warrant a preliminary injunction, the plaintiffs must show also that the threatened injury to them outweighs the prospective damage to defendant. The plaintiffs argue that the balance of hardships tips decidedly in their favor. If the requested relief is not granted, the plaintiffs claim that they will suffer irreparable harm. Any financial harm to be suffered by the state in providing Medicaid benefits, the plaintiffs argue, cannot compare to the irreparable and potentially life-threatening harm suffered by the plaintiffs if they are denied Medicaid coverage.

On balance, I conclude that the plaintiffs have shown preponderantly that the threatened personal injuries they face outweighs the likely financial injury defendant would suffer.

### D. Public interest.

■ Finally, to justify a preliminary injunction, the plaintiffs must demonstrate that the preliminary injunction is not adverse to the public interest. The plaintiffs argue that the public interest would be served by requiring the state to comply with constitutional requirements of equal protection and due process prior to implementing any changes to Medicaid. The plaintiffs argue that the state's budgetary concerns cannot excuse violations of federal statutory or constitutional requirements.

Defendant responds that in light of Colorado's escalating fiscal crisis, the issuance of a preliminary injunction would have an immediate adverse impact on the public interest. First, defendant argues, requiring Colorado to provide Medicaid services to all qualified aliens renders meaningless the mandatory and optional categorization of aliens under the PRWORA. The defendant argues that if a state elects to provide ostensibly optional coverage and then can be required to maintain that coverage, the state would be reluctant to ever provide services to optional populations. Second, the defendant argues that this case involves the allocation of public resources. Should the court issue a preliminary injunction, the state would have to cut or eliminate other programs to achieve the balanced budget required by the Colorado Constitution. The defendant argues that the allocation of state resources and concomitant budget-cutting are inherently and properly legislative in nature. Thus, the Colorado General Assembly, as opposed to this court, has plenary authority to determine how best to allocate decrescent financial resources.

On balance, I conclude that the plaintiffs have not shown preponderantly that the public's interest would be better served by the issuance of a preliminary injunction. Therefore, I find that this factor weighs more heavily in favor of the defendant.

### E. Conclusion.

■ After careful consideration, individually and cumulatively, of the four factors comprising the *sine qua non* to the issuance of a preliminary injunction, I conclude that the two most critical of the four

factors discussed above, i.e., success on the merits and effects on public interest, weigh strongly against the plaintiffs and renders moribund the preliminary injunction they seek. Therefore, the motion is denied.

## IV. ORDERS.

**THEREFORE IT IS ORDERED** as follows:

1. That the plaintiffs' March 28, 2003, motion [# 2] seeking a preliminary injunction **IS DENIED**; and

2. That effective forthwith the extant temporary restraining order [# 9] issued by this court on April 1, 2003, **IS DISSOLVED, RESCINDED, AND ANNULLED.**