**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 14 2000**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ST. CHARLES INVESTMENT CO.,
BURTON C. BOOTHBY, Tax Matters
Person,

      Petitioners - Appellants,

    v.

COMMISSIONER OF INTERNAL
REVENUE,

      Respondent-Appellee.

No. 99-9020

---

**APPEAL FROM THE UNITED STATES TAX COURT**
**(T. Ct. No. 5793-96)**

---

Darrell D. Hallett (John M. Colvin, with him on the briefs), Chicoine & Hallett,
P.S., Seattle, Washington, for Petitioners-Appellants.

Ellen Page DelSole (Gilbert S. Rothenberg, with her on the brief), Attorneys, Tax
Division, Department of Justice, Washington, D.C., for Respondent-Appellee.

---

Before **TACHA**, **McWILLIAMS**, and **MURPHY**, Circuit Judges.

---

**TACHA**, Circuit Judge.

---

    The Commissioner of Internal Revenue ("Commissioner") disallowed

certain deductions claimed by St. Charles Investment Co., Burton C. Boothby,

Tax Matters Person ("St. Charles") after determining that St. Charles had improperly carried forward certain passive activity losses from years in which St. Charles had been a C corporation to the year in which St. Charles became an S corporation. The tax court granted summary judgment in favor of the Commissioner and St. Charles appeals. We exercise jurisdiction pursuant to 26 U.S.C. § 7482 and reverse.

## I. BACKGROUND

Prior to 1991, St. Charles was a closely held C corporation as defined by § 469(j)(1).[1] During the years 1988-1990, St. Charles had been engaged in the real estate rental business. St. Charles's real estate rental activity was a passive activity as defined by § 469(c). In each of the years 1988, 1989, and 1990, St. Charles's passive activities generated total deductions in excess of the total gross income from the activities. Such losses, passive activity losses ("PALs"), are non-deductible pursuant to § 469(a). Section 469(b), however, provides that PALs can be suspended and "carried forward" to the following year. Furthermore, § 469(g)(1)(A) provides that in the year of disposition of the passive activity, any remaining PAL, after the application of § 469(b)'s carry over provision (and after utilizing the PAL to offset gain from the passive activity)

---

[1]     Unless otherwise indicated, all statutory references are to the Internal Revenue Code.

shall be treated as a non-passive loss.

Effective January 1, 1991, St. Charles elected to be taxed as an S corporation. Also in 1991, St. Charles sold several of its rental properties for which there existed suspended PALs for the years 1988, 1989, and 1990. On its 1991 tax return, St. Charles identified the suspended PALs that were associated with the sold properties and claimed those deductions in full pursuant to § 469(g)(1)(A). Furthermore, on its 1991 tax return St. Charles reduced its cost basis with respect to the activities sold in 1991 to reflect the depreciation portion of the PAL deductions taken.

On January 2, 1996, the Commissioner issued a Notice of Final S Corporation Administrative Adjustment for St. Charles's tax year ending December 31, 1991. The Commissioner's adjustment disallowed the deduction of $4,879,852 in suspended PALs and the use of $6,038,001 in suspended PALs for purposes of calculating the Alternative Minimum Tax. The adjustments were based on § 1371(b)(1) which prohibits an S corporation from carrying any "carryforward" from a year in which the corporation was a C corporation to a year in which the corporation is an S corporation. St. Charles petitioned the tax court challenging the Commissioner's adjustments.[2] In addition, St. Charles argued that

2 Adjustments other than those relating to the suspended PALs were also made by the Commissioner and were subsequently challenged by St. Charles in the tax court. However, those adjustments were not the subject of the parties'

-3-

if the PAL deductions were disallowed, St. Charles ought to be able to readjust its cost basis in the sold properties upwards in order to reflect the fact that the depreciation deductions had been disallowed.

In the tax court, the parties cross-moved for partial summary judgment on both issues: (1) whether § 1371(b)(1) precluded St. Charles's deduction in 1991 of suspended PALs that had been incurred between 1988 and 1990 when St. Charles had been a closely held C corporation; and (2) whether, if the Commissioner had properly disallowed the carryover of the suspended PALs, St. Charles was entitled to recalculate its cost basis in the sold properties. The tax court ruled in favor of the Commissioner on both issues, and both rulings are now before this Court on appeal.

## II. ANALYSIS

We review a grant of summary judgment de novo, applying the same legal standard as the court below. <u>Bullington v. United Air Lines, Inc.</u>, 186 F.3d 1301, 1313 (10th Cir. 1999). There is no genuine dispute of material facts, therefore we need only determine whether the lower court correctly applied the substantive law. We review de novo the tax court's interpretation of the various provisions of the Internal Revenue Code. <u>Gitlitz v. C.I.R.</u>, 182 F.3d 1143, 1145 (10th Cir.

_____

cross-motions for partial summary judgment and are not before this court on appeal.

-4-

1999).

The issue is before us as a matter of first impression and, insofar as we can determine, has not been addressed in any other circuit. The parties present diametrically opposed interpretations of what, by any measure, is a complex set of statutory provisions. We begin with a review of each section's place in the broader context of the Internal Revenue Code and then consider and construe the specific statutory language.

Congress enacted the Subchapter S Revision Act of 1982 as part of an ongoing effort to give corporate shareholders the flexibility to be taxed in large measure as if they were a partnership. See generally 5 JACOB MERTENS, JR., THE LAW OF FEDERAL INCOME TAXATION § 41B:239 (1997). Under Subchapter S, the income of a corporation that elects S status is not taxed at the corporation level, but rather, flows through and is taxed as income to the corporation's shareholders individually. Recognizing, however, the potential for abuse inherent in this system, Congress made § 1371(b) a part of subchapter S in order to prevent corporate losses incurred prior to its electing S status from inuring to the benefit of the corporation's shareholders after an S status election. See generally Id. § 41B:02 (The 1982 Act was intended to "prevent unwarranted tax benefits under Subchapter S."); Rosenberg v. C.I.R., 96 T.C. 451, 455 (1991) ("Section 1371(b)(1) . . . is only one of several provisions designed to prevent abuses of the

S corporation election.").

Four years later, in 1986, Congress enacted § 469 out of concern that taxpayers were "front-loading" deductions arising from activities in which the taxpayers did not participate (passive activities) and using those deductions to reduce the taxpayers' other income. See generally 5 MERTEN, supra § 24C:02. Section 469, therefore, is a comprehensive, cradle-to-the-grave statutory scheme governing gain and loss from passive activities. Section 469 allows PALs to be deducted only to the extent the taxpayer has passive activity gains. Any remaining PAL is suspended, and carried over to the next year, again becoming available to offset passive activity gains. Only upon the disposition of the passive activity does the entire PAL, including the suspended PALs from previous years, become available as a deduction against both passive activity gains and other, ordinary income.

It is our primary task in interpreting statutes to "determine congressional intent, using 'traditional tools of statutory construction.'" NLRB v. United Food & Commercial Workers Union, 484 U.S. 112, 123 (1987) (quoting INS v. Cardoza-Fonseca, 480 U.S. 421, 446 (1987)). As in all cases requiring statutory construction, "we begin with the plain language of the law." United States v. Morgan, 922 F.2d 1495, 1496 (10th Cir. 1991). In so doing, we will assume that Congress's intent is expressed correctly in the ordinary meaning of the words it

employs. <u>Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.</u>, 469 U.S. 189, 194, 105 S. Ct. 658, 83 L. Ed. 582 (1985). Therefore, "[i]t is a well established law of statutory construction that, absent ambiguity or irrational result, the literal language of a statute controls." <u>Edwards v. Valdez</u>, 789 F.2d 1477, 1481 (10th Cir. 1986). Where the language of the statute is plain, it is improper for this Court to consult legislative history in determining congressional intent. <u>United States v. Richards</u>, 583 F.2d 491, 495 (10th Cir. 1978). Furthermore, legislative history may not be used to create ambiguity in the statutory language. <u>Id.</u> Our role in construing statutes was summarized by Justice Holmes: "'We do not inquire what the legislature meant; we ask only what the statute means.'" <u>Edwards</u>, 789 F.2d at 1481 n.7 (quoting OLIVER WENDELL HOLMES, COLLECTED LEGAL PAPERS 207 (1920)). Therefore, despite each party's reliance on legislative history to buttress its position, we rely first on the language of the statute.

The crux of the statutory dispute centers on the conflict between the two specific carryover provisions: § 469(b) and § 1371(b)(1). Section 469(b) states: "Except as otherwise provided in this section, any loss or credit from an activity which is disallowed under subsection (a) shall be treated as a deduction or credit allocable to such activity in the next taxable year." Section 1371(b)(1), on the other hand, provides that "[n]o carryforward, and no carryback, arising for a

taxable year for which a corporation is a C corporation may be carried to a taxable year for which such corporation is an S corporation." We must decide which statutory section governs the treatment of suspended PALs after a corporate changeover from a C year to an S year. Either the language of § 469(b) functions as a statutory "traffic cop," preventing any provision of the Code outside of § 469 itself from negating the general rule of § 469(b), or, § 1371(b)(1)'s clear prohibition on carryovers effectively trumps the general rules of § 469. We hold that the plain language of § 469 precludes application of § 1371 to the suspended PALs of a corporation in the first year of its S election. Because we hold that St. Charles's suspended PALs are deductible in 1991, we need not reach a conclusion on the question of whether St. Charles is entitled to a cost basis readjustment.

It is a general rule of statutory construction that "if a statute specifies exceptions to its general application, other exceptions not explicitly mentioned are excluded." United States v. Goldbaum, 879 F.2d 811, 813 (10th Cir. 1989). This Court has previously applied this rule to statutes containing "except as otherwise provided" language. For example, in O'Gilvie v. United States, 66 F.3d 1550, 1555 (10th Cir. 1995), we stated that the language of § 61(a) of the Internal Revenue Code—"[e]xcept as otherwise provided in this subtitle, gross income means all income from whatever source derived"—precluded the application of exceptions from gross income not specifically appearing in the

subtitle.  Similarly, in <u>Henry v. Office of Thrift Supervision</u>, 43 F.3d 507, 512 (10th Cir. 1994), we held that the language of 12 U.S.C. § 1818(i)(1)—"[e]xcept as otherwise provided in this section ... no court shall have jurisdiction [to review enforcement orders of the Office of Thrift Supervision]"—precluded a party from relying on the Administrative Procedures Act to grant a court jurisdiction to review such an order.  The structure of § 469(b) is not materially different from the statutes construed in either <u>O'Gilvie</u> or <u>Henry</u>.  Section 469(b) sets forth the general rule that PALs that are non-deductible pursuant to § 469(a) shall be "suspended" and treated as deductions in the following year.  Section 469(b) further states that the only exceptions to the general rule are those enumerated in § 469 itself—namely, the limitation on deductibility found in § 469(a).  Under our accepted rules of statutory construction, we hold that the "except as otherwise provided in this section" language of § 469(b) prevents the application of un-enumerated exceptions to the general rule of the statute.  Because § 1371's restrictions on carryforwards from a C year to an S year are not enumerated in § 469, they have no effect on the operation of § 469(b), and St. Charles's suspended PALs from the years 1988-1990 are deductible in the year 1991 subject only to § 469 itself.

The Commissioner has offered a variety of arguments why the "except as otherwise provided" language of § 469(b) does not preclude the application of §

1371(b)(1) to this case. First, the Commissioner appeared to concede that, as a matter of statutory construction, the language of § 469(b) *does* preclude the application of exceptions outside of § 469 itself. However, the Commissioner argued that § 1371(b)(1)'s prohibition on carryovers from a C year to an S year was not an exception to § 469(b):

> In other words, Section 469(b) only prohibits other Code sections from interfering with the right to *allocate* the suspended loss to the activity to which it relates in the next year—a result distinct from actually guaranteeing that no other Code provision can interfere with the right to claim the deduction. In this manner, the statutory scheme contemplates that a taxpayer can have unused passive activity losses repeatedly carried over for successive years without limitation.

Appellee's Br. at 28 (emphasis in original). This approach to the statutory language is disingenuous. By characterizing § 1371(b)(1)'s restrictions as restrictions on deductibility rather than as restrictions on carryover-ability, the Commissioner has tried to give effect to both § 469 and § 1371. The problem arises, however, with the actual language of § 1371 which clearly applies only to restrict "carryforwards." Contrary to the Commissioner's position in his brief, § 1371(b)(1) says nothing about the deductibility of carryforwards. If the Commissioner concedes that Congress contemplated in § 469 that a taxpayer's suspended PALs can be "repeatedly carried over for successive years without limitation," then § 1371(b)(1) cannot prevent the carryover.

Later, at oral argument, the Commissioner backed away from the

concessions made in his brief and argued that the "except as otherwise provided" language of § 469 was boilerplate statutory language and should not be construed in such a way to interfere with the clear legislative intent of § 1371.[3] We are not convinced. Such an approach would disregard the accepted rules of statutory construction discussed above. Congress is presumed to have said what it meant and we will give effect to its intent as expressed in the plain language of § 469.

Further evidence that the result we reach was intended by Congress is found in § 469(f)(2) which states:

> If a taxpayer ceases for any taxable year to be a closely held C corporation or personal service corporation, this section shall continue to apply to losses and credits to which this section applied for any preceding taxable year in the same manner as if such taxpayer continued to be a closely held C corporation or personal service corporation, whichever is applicable.

Thus, § 469 applies to St. Charles's suspended PALs in 1991 *as if* St. Charles had continued in its C status. There is nothing in the statutory language to support the Commissioner's assertion that § 469(f)(2) was not intended to apply to a C corporation that later becomes an S corporation. Where a corporation goes from a closely held C corporation to an S corporation, it has "cease[d] ... to be a closely

---

[3]     Due to the Commissioner's change of position at oral arguments, we ordered simultaneous, supplemental briefing from the parties on the specific question of what effect, if any, the "except as otherwise provided" language of § 469 had on the application of § 469(b) to this case. The Commissioner reiterated both the argument made in his original brief and the argument presented at oral argument.

held C corporation" within the meaning of § 469(f)(2) and § 469 shall apply to its PALs as if it remained a closely held C corporation. The language of § 469(b), which seals off its general rule from exceptions outside § 469, along with the provisions of § 469(f)(2), which allows the application of § 469 to a corporation's PALs even after it ceases to be a closely held C corporation, give us ample reason to conclude that St. Charles's suspended PALs did carryover to 1991 and were deductible subject only to the limitations contained in § 469.

The Commissioner argues that even if § 469(b) restricts the application of § 1371(b)(1), the language of § 469(g)(1)(A) transforms a PAL into a net operating loss ("NOL") upon the disposition of the passive activity, thus removing the loss from the ambit of § 469. Section 469(g)(1)(A) provides:

> If all gain or loss realized on such disposition is recognized, the excess of (i) any loss from such activity for such taxable year (determined after the application of subsection (b)), over (ii) any net income or gain for such taxable year from all other passive activities (determined after the application of subsection (b)), shall be treated as a loss which is not from a passive activity.

Thus, the Commissioner urges that once the loss becomes non-passive, it can only be an NOL which is not governed by § 469. Therefore, there is nothing to prevent it from being subject to the restrictions of § 1371(b)(1). It is clear that § 1371(b)(1) does prohibit the carryover of NOLs from a C year to an S year. Rosenberg v. C.I.R., 96 T.C. 451 (1991); 26 C.F.R. § 1.172-1(f). St. Charles responds that, upon disposition, the excess of the PAL over all passive activity

-12-

gain does not become an NOL merely by virtue of it becoming non-passive. St. Charles argues that the non-passive loss contemplated by § 469(g)(1)(A) is more akin to an accounting device used to govern the timing of deductions.

In our view, the focus of the parties on whether § 469(g)(1)(A) creates an NOL is misplaced and misses the point. First, we do not think that the language "shall be treated as a loss which is not from a passive activity" was intended to create an NOL. Should Congress have wished to create an NOL, it knew how to do so explicitly. See, e.g., 26 U.S.C. § 108(d)(7)(B). More importantly, however, the Commissioner's argument ignores the fundamental issue of timing. Even if we were to agree with the Commissioner that upon the application of § 469(g)(1)(A) an NOL was created, the prohibition of § 1371(b)(1) against carrying forward an NOL still would not apply. Section 469(g)(1)(A), by its own language, does not take effect until *after* the application of § 469(b). This is the key point. Thus, at the time the loss is "carried over" it is still passive. It is only after the PAL arrives in the current taxable year that it becomes non-passive pursuant to § 469(g)(1)(A). Once the suspended PALs have cleared the carryover hurdle of § 1371(b)(1) via § 469(b), there remains nothing in subchapter S to prevent their deduction as non-passive losses—regardless of whether they are characterized as NOLs or something else entirely.

Finally, the Commissioner argues that such a result will create a windfall in

favor of the shareholders of St. Charles, effectively allowing one taxpayer (the shareholder) to offset his income with the losses of a different taxpayer (the corporation).  In the past we have held that the Internal Revenue Code should not be interpreted to grant the taxpayer a windfall absent unequivocal support for such a result in the statutory text.  Gitlitz, 182 F.3d at 1147-48.  While we have sympathy for the Commissioner's position, we find that in this case the language of § 469 is sufficiently unequivocal to require this result.

### III. Conclusion

In sum, we hold that St. Charles's suspended PALs from the years 1988, 1989, and 1990 are carried over to 1991 pursuant to § 469(b) and § 469(f)(2).  Furthermore, those suspended PALs associated with the activities disposed of in 1991 are fully deductible pursuant to § 469(g)(1)(A).  Because we hold for St. Charles on this issue, we do not reach the second question raised on appeal.  The decision of the tax court is REVERSED.