The **CHICKASAW NATION** and The **Choctaw Nation, Plaintiffs,**

v.

The **DEPARTMENT OF the INTERIOR et al., Defendants.**

**No. CIV-05-1524-W**

United States District Court, W.D. Oklahoma.

Signed April 22, 2015

---

Bradley Earl Beckworth, John C. Hull, Nix Patterson & Roach LLP, Austin, TX, Charles Cary Patterson, Nix Patterson & Roach LLP, Texarkana, TX, Dallas L. Dale Strimple, Jason B. Aamodt, Aamodt Law Firm, Louis W. Bullock, Bullock Law Firm PLLC, Deanna L. Hartley, Tulsa, OK, Daniel S. Volchok, David W. Bowker, Seth P. Waxman, Wilmer Cutler Pickering Hale & Dorr LLP, Washington, DC, Michael Burrage, Randa Kay Reeves, Reggie N. Whitten, Whitten Burrage, Robert H. Henry, Oklahoma City, OK, Trey N. Duck, III, Nix Patterson & Roach LLP, Daingerfield, TX, Bob Rabon, Rabon Wolf & Rabon, Hugo, OK, Kerry L. Pedigo, Miller Keffer & Pedigo, Dallas, TX, for Plaintiffs.

Frank J. Singer, III, Jessica M. Held, Judith E. Coleman, Marissa A. Piropato, Matthew M. Marinelli, Anthony P. Hoang, Robert W. Rodrigues, Washington, DC, Robert Don Evans, Jr., US Attorney's Office, Oklahoma City, OK, for Defendants.

## ORDER

LEER R. WEST, UNITED STATES DISTRICT JUDGE

Pending before the Court is the following question posed by the plaintiffs, The Chickasaw Nation and The Choctaw Nation (collectively "Nations"): did Section 16 of the Five Tribes Act, 34 Stat. 137 ("Five Tribes Act" or "1906 Act"), "prohibit[ ] the sale [by the United States Secretary of the Interior ("Secretary")] of the Nations' unallotted lands "'principally valuable ... for timber purposes.'"[1] Doc. 254 at 8 (footnote omitted).[2] In their Motion for Partial Summary Judgment filed pursuant to Rule 56, F.R.Civ.P., the Nations have sought "judgment as a matter of law on ... [this] single legal issue[.]" Doc. 254 at 9.

Conversely, in their Cross-Motion for Partial Summary Judgment also filed pursuant to Rule 56, supra, defendants United States of America, United States Department of the Interior ("DOI"), Bureau of Indian Affairs, Office of the Special Trustee for American Indians, Office of Trust Fund Management ("OTFM"), Bureau of

---

1. The Nations have contended that the Court has already answered this question in the affirmative, see Doc. 176 at 22 n.32, and they have stated in their Motion for Partial Summary Judgment that they seek only an order that reduces that ruling to a judgment, suggesting that the Court's ruling is "law of the case." Doc. 254 at 3. The defendants have argued that the issue now presented in the instant motions was not fully briefed by the parties, see Doc. 260-1, when the Court was addressing the defendants' challenges to this Court's jurisdiction and their arguments that the Nations' claims were untimely and/or barred by the doctrine of res judicata.

"As most commonly defined, the [law of the case] doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Arizona v. California. 460 U.S. 605, 618, 103 S.Ct. 1382,

75 L.Ed.2d 318 (1983)(citation and footnote omitted). "Th[e] doctrine 'directs a court's discretion, it does not limit [its] ... power.'" Pepper v. United States. 562 U.S. 476, 131 S.Ct. 1229, 1250, 179 L.Ed.2d 196 (2011)(quoting Arizona. 460 U.S. at 618, 103 S.Ct. 1382). Therefore, if the Court "is 'convinced that [its prior decision] is clearly erroneous and would work a manifest injustice[,]'" Agostini v. Felton. 521 U.S. 203, 236, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997)(quoting Arizona, 460 U.S. at 618 n. 8, 103 S.Ct. 1382), the doctrine does not apply. Accordingly, to the extent this Court interpreted Section 16 in its Order of April 16, 2014, the Court finds it necessary at this stage to reexamine that interpretation.

2. See Doc. 269 at 11 ("only issue before this [C]ourt is whether the sale of lands between 1914 and 1938 was prohibited by the 1906 Act").

Land Management ("BLM"), Office of Natural Resources Revenue ("ONRR"), Bureau of Ocean Energy Management ("BOEM"), Bureau of Safety and Environmental Enforcement ("BSEE") and United States Department of Treasury ("Treasury"), and, all in their official capacities, defendants S.M.R. Jewell, DOI Secretary, Kevin K. Washburn, Assistant Secretary for Indian Affairs, Vincent G. Logan, Special Trustee for American Indians, Sim-Wing Gohard, OTFM Director, Neil Kornze, BLM Director, Gregory J. Gould, ONRR Director, Abigail Ross Hopper, BOEM Director, Brian Salerno, BSEE Director,[3] and Jacob Lew, Treasury Secretary (collectively "United States");—have argued that "[r]ather than prohibit the sale of lands principally valuable for timber purposes, Section 16 required [the Secretary] ... to sell all residue lands[,]" Doc. 260-1 at 7, and that the Court should therefore "enter judgment confirming that [the Secretary's] ... sale of lands principally valuable for timber purposes was lawful." Id.

Rule 56(a), supra, permits the grant of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and [that it] ... is entitled to judgment as a matter of law." The parties have agreed that there are no conflicting facts; they have submitted that the instant controversy instead presents a matter of statutory interpretation that is an appropriate subject for summary judgment. E.g., Thomas v. Metropolitan Life Insurance Co., 631 F.3d 1153, 1160 (10th Cir. 2011); State of Oklahoma ex rel. Department of Human Services v. Weinberger, 741 F.2d 290, 291 (10th Cir.1983)(questions of statutory construction and legislative history present legal questions properly resolved by summary judgment).

In April 1906, the United States Congress passed the Five Tribes Act, 34 Stat. 137, "[t]o provide for the final disposition of the affairs of the Five Civilized Tribes .... " 1906 Act, 34 Stat. at 137. Despite Congress' contemplated dissolution of the Nations as reflected in its title, the 1906 Act not only recognized that the "[t]ribal governments continued," 1906 Act § 28, 34 Stat. at 148, but also delayed the termination of those governments. According to the Nations, "[a]t the same time that Congress was clarifying that the Nations' governments were to continue operating into the indefinite future [through the passage of Section 28 of the Five Tribes Act[4]], ... [Congress was] also establish[ing] clear rules [in that same legislation] on how the Nations' property[5] was to be managed by the United States." Doc. 91 at 13, 36.

Section 16 of the Five Tribes Act, as ultimately enacted, together with Sections 7 and 13, defined the Secretary's authority to sell the Nation's lands. Section 7 segre-

---

**3.** On October 1, 2011, the Bureau of Ocean Energy Management, Regulation and Enforcement, formerly the Minerals Management Service, was replaced by BOEM and BSEE as part of a major reorganization.

**4.** Section 28 read

[t]hat the tribal existence and present tribal governments of the Choctaw[ and] Chickasaw ... [N]ations are hereby continued in full force and effect for all purposes authorized by law, until otherwise provided by law[.]

1906 Act § 28, 34 Stat. at 148.

**5.** The United States Congress had earlier created a three-member commission, commonly referred to as the "Dawes Commission" after United States Senator Henry L. Dawes, the Commission's chairman and a "leading congressional proponent of allotment and assimilation." Harjo v. Kleppe, 420 F.Supp. 1110, 1121 (D.D.C.1976), aff'd sub nom. Harjo v. Andrus, 581 F.2d 949 (D.C.Cir.1978), to negotiate with the Five Civilized Tribes regarding the allotment and allocation of tribal lands. E.g., Seminole Nation v. United States, 78 Ct.Cl. 455, 1933 WL 1802 *8 (1933)(Dawes Commission clothed with jurisdiction to negotiate with Five Civilized Tribes).

gated and reserved from allotment certain tracts of The Choctaw Nation, and it directed the Secretary to "cause to be estimated and appraised the standing pine timber on all of said lands," 1906 Act § 7, 34 Stat. at 139, and then sell the segregated tracts and pine timber thereon at public auction or by sealed bids for cash. See id. Section 13 of the 1906 Act expressly reserved from sale by the Secretary the Nations' "coal and asphalt lands, whether leased or unleased ... until the existing leases ... shall have expired or until such time as may be otherwise provided by law." 1906 Act § 13, 34 Stat. at 142.

Section 16, which is, as stated, the subject of the parties' cross-motions, guided the sale of tribal lands of the Five Civilized Tribes; it read:

That when allotments as provided by this and other Acts of Congress have been made to all members and freedmen of the Choctaw, Chickasaw, Cherokee, Creek, and Seminole tribes, the residue of lands in each of said nations not reserved or otherwise disposed of shall be sold by the Secretary ... under rules and regulations to be prescribed by him and the proceeds of such sales deposited in the United States Treasury to the credit of the respective tribes. ... The Secretary ... is hereby authorized to sell, whenever in his judgment it may be desirable, any of the unallotted land in the Choctaw and Chickasaw Nations, which is not principally valuable for mining, agricultural, or timber purposes, in tracts of not exceeding six hundred and forty acres to any one person, for a fair and reasonable price, not less than the present appraised value. ... Provided further, That agricultural lands shall be sold in tracts of not exceeding one hundred and sixty acres to any one person.[6]

1906 Act § 16, 34 Stat. at 143.[7]

As the parties have recognized, "[t]he starting point in any case involving statutory construction is the language of

---

**6.** The initial draft of the Five Tribes Act proposed by DOI and referred to the House of Representatives Committee on Indian Affairs imposed no limitations on the Secretary's sale of unallotted lands that had "not [been] reserved or otherwise disposed of []" H.R. No. 59-74 at 8, Section 16 (December 7, 1905). Section 16 of H.R. 5976, a bill thereafter introduced by Rep. Charles Curtis and referred to the House Committee on Indian Affairs on December 11, 1905, 40 Cong. Rec. 308, when reported with amendments to the Committee of the Whole House, likewise permitted, after "allotments ... ha[d] been made to all members and freedmen of the Choctaw[ and] Chickasaw ... tribes, [the sale by the Secretary of] the residue of lands in each of said [N]ations not reserved or otherwise disposed of .... " H.R. 5976, 59th Cong. (January 11, 1906).

As H.R. Report No. 59–183 (January 11, 1906), which accompanied H.R. 5976 noted, Section 16, together with two other sections, "make all necessary provision for the sale of .... all surplus lands of the tribes." See 40 Cong. Rec. 1245 (January 18, 1906)(recognizing that H.R. 5976 provided that unallotted, unreserved land "surplus land ... shall be sold in unlimited quantities" at the Secretary's discretion, Rep. John H. Stephens proposed "that no more than 160 acres shall be sold to any one person or individual"); id. (as amended by committee, Section 16 read: "That agricultural lands shall be sold in tracts of not exceeding 160 acres to any one person")

H.R. 5976 was referred to the Senate Committee on Indian Affairs on January 22, 1906, 40 Cong. Rec. 1340, 1349, and as reported with committee amendments on February 23, 1906, and corrected on February 23, 1906, it authorized the Secretary "to sell, whenever in his judgment it may be desirable, any of the unallotted land in the ... [N]ations, which is not principally valuable for mining, agricultural, or timber purposes, in tracts not exceeding [640] ... acres to any one person, for a fair and reasonable price ... Provided further, That agricultural lands shall be sold in tracts of not exceeding [160] ... acres to any one person." Section 16, as amended, was identical to the version that was enacted.

**7.** Because Section 29 repealed all inconsistent provisions, e.g., 1906 Act § 29, 34 Stat. 148,

the statute itself." Ramah Navajo Chapter v. Lujan, 112 F.3d 1455, 1460 (10th Cir.1997)(citation omitted); e.g., Miller v. Commissioner of Internal Revenue, 836 F.2d 1274, 1283 (10th Cir.1988)(statutory language must be primary source of any interpretation). "'When the terms of the statute are clear and unambiguous, that language is controlling absent rare and exceptional circumstances," Wilson v. Stocker, 819 F.2d 943, 948 (10th Cir.1987)(citations omitted), and if "construction according to its terms does not lead to absurd or impracticable consequences, the words employed are to be taken as the final expression of the meaning intended." United States v. Missouri Pacific Railroad Co., 278 U.S. 269, 278, 49 S.Ct. 133, 73 L.Ed. 322 (1929).

 Thus, "[w]here the language of the statute is plain, it is improper for this Court to consult legislative history in determining congressional intent." St. Charles Investment Co. v. Commissioner of · Internal Revenue, 232 F.3d 773, 776 (10th Cir.2000)(citation omitted), and such "history may not be used to create ambiguity in the statutory language." Id.(citation omitted). In construing statutes, the Court is "'not [to] inquire what the legislature meant; [rather, the Court] ... ask[s] only what the statute means.'" Id. (quoting Edwards v. Valdez, 789 F.2d 1477, 1481 n. 7 (10th Cir.1986)(quoting Holmes, Collected Legal Papers 207 (1920))).

 While the Nations and the United States have agreed that Section 16 is not ambiguous, see Doc. 254 at 12 ("Neither the Nations nor Defendants claim this language is ambiguous"); Doc. 260-1 at 24 ("statutory text of Section 16 is ... unambiguous"),[8] they have disagreed over the

---

prior legislative provisions, if any, regarding the sale of unallotted and/or nonreserved at lands had been repealed. See, e.g., Act of July 1, 1902, § 14, 32 Stat. 641, 642.

**8.** Despite their agreement that Section 16 is not ambiguous and that the Court's analysis should not proceed beyond the plain language of that section, both the Nations and the United States have cited to, and relied on, legislative history, federal policy and/or the Indian canons of construction to confirm and buttress their respective positions. For that reason and because "the reasons for and the significant circumstances leading up to the enactment may be noticed in confirmation of the meaning conveyed by the words use," Missouri Pacific Railroad, 278 U.S. at 278, 49 S.Ct. 133 (citations omitted), the Court has repeated some legislative history. See n.6 supra.

That Indian canon of construction, invoked by the Nations, that mandates that "statutes are to be construed liberally in favor of the Indians," Montana v. Blackfeet Tribe of Indians, 471 U.S. 759, 766, 105 S.Ct. 2399, 85 L.Ed.2d 753 (1985), does not apply in this instance. Liberal interpretation in the Indians' favor applies only in the presence of an ambiguity. E.g., id. (ambiguous provisions interpreted to Indians' benefit)(citations and

footnote omitted). See Chickasaw Nation v. United States, 534 U.S. 84, 99, 122 S.Ct. 528, 151 L.Ed.2d 474 (2001)(Indian canon of construction applicable only after "nothing in the text, legislative history, or underlying policies" resolved ambiguity in legislative enactment); South Carolina v. Catawba Tribe. 476 U.S. 498, 506, 106 S.Ct. 2039, 90 L.Ed.2d 490 (1986)(Indian canon of construction means "doubtful expressions Indian of legislative intent must be resolved in favor of the Indians").

To the extent the parties have referred to certain contemporaneous constructions that they believe support their respective positions, the Court finds, if appropriate to consider the same in the absence of ambiguity, but see Houghton v. Payne, 194 U.S. 88, 99, 24 S.Ct. 590, 48 L.Ed. 888 (1904)(only where statute is ambiguous that weight is given to doctrine of contemporaneous construction), that such construction arguably favors the United States' interpretation of Section 16. See, e.g., Doc. 155-2 (Annual Message of Green McCurtain)(October 5, 1908); Doc. 105-9 at 2 (Auction Sale of Indian Timber Lands)(October 1, 1913)(land classified as agricultural will be offered in tracts not exceeding 160 acres and not more than 160 acres of agricultural land will be sold to any one person; other lands

meaning of its "clear and unambiguous," Wilson, 819 F.2d at 948 (citations omitted), terms. The Nations have alleged that Section 16 "withdrew from the Secretary the authority to sell the [t]imber [l]ands ... and required [such] ... [l]ands be retained," Doc. 91 at 14, ¶ 38, and they have argued that although Section 16 makes clear that the Secretary was authorized to sell, whenever in the Secretary's judgment such sale was desirable, only that unallotted land that was "not principally valuable for ... timber purposes," 1906 Act § 16, 34 Stat. at 143 (emphasis added), the United States, as it has admitted in its Answer to Third Amended Complaint, "sold or transferred out of trust," Doc. 99 at 19, ¶ 48, "lands that contained timber resources." Id. See Doc. 148-1 (Disposal of the Chickasaw and Choctaw Nations' Timberlands as Set Forth in Annual Reports of the Commissioner to the Five Civilized Tribes (1,358,702.4 acres of timber lands sold)).

The United States has argued that Nations' interpretation of Section 16 is contrary to the plain language of the statute and "is inherently implausible." Doc. 260-1 at 13. It has contended that to give effect to all of Section 16, the statute must be read to mean that the Secretary was authorized to sell the residue of all lands not already allotted, reserved or otherwise disposed of, and, in doing so, must heed the specifications on tract sizes for two types of residue land: (1) as to that land "not principally valuable for mining, agricultural, and timber purposes," 1906 Act § 16, 34 Stat. at 143, any tract conveyed to any one person could not exceed 640 acres, and (2) as to "agricultural lands," any tract conveyed to any one person could not exceed 160 acres. According to the United States, Section 16 merely excludes those lands "not principally valuable for mining, agricultural, and timber purposes" "from [the] tract-sized limitations that [were] ... intended to apply to generic residual lands." Doc. 260-1 at 13.[9]

 It is a " 'cardinal principle' of interpretation that courts 'must give effect, if possible, to every clause and word of a statute.' " Loughrin v. United States, — U.S. —, —, 134 S.Ct. 2384, 2390, 189 L.Ed.2d 411 (2014) (quoting Williams v. Taylor. 529 U.S. 362, 404, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)(further citation omitted)) (footnote omitted). In doing so in this instance, the Court finds, according to Section 16's plain text, that Section 16 contains no language that expressly re-

---

will be sold in tracts not exceeding approximately 640 acres); Doc. 105-8 at 2 (Government Auction Sale of Indian Timber Lands)(August 30, 1912)(no restriction on number of tracts that may be sold to any one person); Doc. 105-7 at 2 (Government Sale of Timber Lands)(1911-1912)(not more than 160 acres of agricultural land and 640 acres of other land will be sold to one person in any one Nation); Doc. 105-2 at 3 (Auction Sale by Government of Indian Timber Lands)(August 7, 1913)(not more than 160 acres of agricultural land will be sold to any one person, firm or corporation; lands not classified as agricultural will be offered in tracts not exceeding approximately 640 acres in size).

9. As stated, Section 7 "segregate[d] and reserve[d] from allotment," 1906 Act § 7, 34 Stat. at 139, certain tracts located in The Choctaw Nation; Section 13 reserved from immediate sale "all coal and asphalt lands." 1906 Act § 13, 34 Stat. at 142. According to the United States, these "explicit reservations ... demonstrate that Congress knew how to use plain language to reserve lands from allotment or sale," Doc. 260-1 at 12, and "[h]ad Congress intended to reserve any additional land, [including timber lands,] it would have done so expressly ...." Id. (citing Russello v. United States. 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983)(" 'Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.' ")(quotation omitted)).

serves from allotment or sale land that is "principally valuable for ... timber purposes." Rather, the first sentence of Section 16 authorized and required the Secretary to sell all of the Nations' unallotted lands "not reserved or otherwise disposed of," 1906 Act § 16, 34 Stat. at 143; the statute's fourth sentence committed the sale of those lands to the Secretary's discretion ("whenever ... it may be desirable," *Id.* ), and, together [10] with the proviso, established certain acreage limitations on those sales. To now agree with the Nations' interpretation of, or to affirm any prior interpretation given by the Court to, Section 16, would, in the Court's opinion, contradict Section 16's mandate to sell "the residue of lands in each of [the] ... [N]ations not reserved or otherwise disposed of." 1906 Act § 16, 34 Stat. at 143.

Accordingly, the Court

(1) GRANTS the United States' Cross Motion for Partial Summary Judgment [Doc. 260] filed on March 26, 2015; and

(2) DENIES the Nations' Motion for Partial Summary Judgment [253] filed on March 5, 2015.

10. According to "the grammatical rule of the last antecedent, ... 'a limiting clause or phrase ... should ordinarily be read as modifying only the noun or phrase that it immediately follows.' " Paroline v. United States, —— U.S. ——, ——, 134 S.Ct. 1710, 1721, 188 L.Ed.2d 714 (2014)(quoting Barnhart v. Thomas, 540 U.S. 20, 26, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)). While the "rule is 'not an absolute and can assuredly be overcome by other indicia of meaning,'" id. (quotation omitted), the Court finds in the instant case that such rule dictates that the "limiting clause or phrase" found in sentence four of Section 16, "not principally valuable for mining, agricultural, or timber purposes," modifies the immediately preceding phrase: "any of the unallotted land in the Choctaw and Chickasaw Nations," and thus, the fourth sentence should be construed to impose a tract-size limitation on the sale of, what the United States has termed, " 'valueless' unallotted lands." Doc. 269 at 4 n.2.